In re **COLUMBIA GAS SYSTEMS INC.**
**Columbia Gas Transmission**
**Corporation, Debtors,**

**U.S. TRUSTEE,**

v.

**COLUMBIA GAS SYSTEMS INC.**
**Columbia Gas Transmission**
**Corporation**

**Thomas E. Ross, Trustee**

**Official Committee of Unsecured Creditors of the Columbia Gas System, Inc.; The Official Committee of Equity Security Holders of the Columbia Gas System, Inc. Appellee**

**Columbia Gas System, Inc. ("CG"); Columbia Gas Transmission Corporation ("TCO"), Appellants.**

No. 93–7609.

United States Court of Appeals, Third Circuit.

Argued May 2, 1994.

Decided Aug. 29, 1994.

Edward B. Maxwell, 2nd (Argued), James L. Patton, Jr., Robert S. Brady, Bhavana Sontakay, Young, Conaway, Stargatt & Taylor, Wilmington, DE, for appellants.

Thomas E. Ross, U.S. Trustee, Frederic J. Baker, Sr. Asst. U.S. Trustee, John D. McLaughlin, Jr., Office of the U.S. Trustee, Philadelphia, PA, Martha L. Davis, General Counsel, T. Patrick Tinker (Argued), Executive Office for U.S. Trustees, Washington, DC, for appellee Thomas E. Ross.

S. David Peress, Morris, Nichols, Arsht & Tunnell, Wilmington, DE, for appellee Official Committee of Unsecured Creditors of the Columbia Gas System, Inc.

Elizabeth P.S. Fouche LeBoeuf, Lamb, Greene & MacRae, Albany, NY, for appellee Official Committee of Equity Sec., Holders of the Columbia Gas Systems, Inc.

Before: SLOVITER, Chief Judge,
HUTCHINSON and SEITZ, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Chief Judge.

Before us on this appeal is a statutory interpretation issue of first impression for an appellate court—whether the investment rules set forth in 11 U.S.C. § 345(b) for bankruptcy estates are mandatory requirements or merely suggested methods of investment that the bankruptcy court can modify or waive. The issue is a legal one over which our review is plenary.

## I.

Appellant Columbia Gas Systems, Inc. is a parent utility holding company with eighteen operating subsidiaries, including appellant Columbia Gas Transmission Corporation. The entities are engaged in the wholesale and retail natural gas industry and, all together, have assets exceeding $6 billion.

On July 31, 1991, Columbia Gas Systems, Inc. and Columbia Gas Transmission Corporation (collectively the "Debtors") filed voluntary bankruptcy petitions under chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (1988 & Supp. IV 1992). The Debtors have continued to operate their businesses as debtors-in-possession under 11 U.S.C. § 1107 (1988). The cases have been consolidated for administrative purposes.

On the day of filing the petitions, the Debtors also applied for a number of "first day" orders, including an order to approve their investment guidelines as being in compliance with 11 U.S.C. § 345 (1988). The guidelines, which had been used by the Debtors pre-petition, governed investment of all of the estates' cash, cash equivalents, deposit accounts and other short term investments. The Debtors' investment guidelines authorized the following types of investments: (1) repurchase agreements using government securities; (2) time deposits, certificates of deposit, bankers' acceptances and highly rated commercial paper issued by highly rated banks or bank holding companies; (3) highly rated commercial paper issued by domestic corporations; and (4) time deposits, certificates of deposit, bankers' acceptances and highly rated commercial paper issued by foreign entities, including foreign banks.

The bankruptcy court approved the guidelines stating that they were "deemed adequate and sufficient compliance with the requirements of Section 345 of the Bankruptcy Code," and that the Debtors were "relieved from the obligation under Section 345(b) . . . of obtaining a bond from an entity with which the money is deposited or invested." App. at 15–16.

The United States Trustee filed a motion for reconsideration on the ground that the guidelines violated 11 U.S.C. § 345(b). The official committees for the secured and unsecured creditors advised the bankruptcy court that they approved the Debtors' guidelines. The bankruptcy court denied the motion on October 3, 1991 and the U.S. Trustee appealed to the district court which referred the matter to a magistrate judge.

On May 7, 1993, the magistrate judge entered a report and recommendation to vacate the order on the ground that the requirements of section 345(b) are mandatory and the Debtors' guidelines did not comply with them. The district court adopted the report and, on August 19, 1993, ordered that the case be remanded to the bankruptcy court for further proceedings.

The Debtors filed a timely notice of appeal from the district court's order on August 30, 1993. The district court's order has been stayed pending this appeal.

## II.

### A. *Standing*

The Debtors contend that the U.S. Trustee does not have standing to bring this suit. They argue that he has suffered no injury-in-fact in that he has no pecuniary interest in this case and has no pertinent statutory duties that would provide a basis for standing.

The U.S. Trustee Program was initiated with the enactment of the Bankruptcy Code in 1978 as a Pilot Program in the Department of Justice and was designed to relieve the bankruptcy judges of certain administra-

tive matters. *See* Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, § 101, 92 Stat. 2549, 2651–57 (1978). The Program was expanded by the Bankruptcy Act of 1986. *See* Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986, Pub.L. No. 99–554, §§ 111–115, 201–230, 100 Stat. 3008, 3090–95, 3097–3103 (1986). The broad general responsibilities of the U.S. Trustee were listed in the House Report accompanying this later statute as:

> to monitor applications for compensation and reimbursement; to monitor plans and disclosure statements in chapter 11 cases; to monitor plans in chapter 13 cases; to make sure that all reports, schedules, and fees required to be filed by debtors (including the new filing fees due each quarter in chapter 11 cases) are in fact filed; to monitor the functioning of creditors' committees; to notify the U.S. Attorney of possible crimes uncovered and cooperate with the U.S. Attorney in subsequent prosecutions; to monitor progress of bankruptcies and keep cases moving; and, to monitor the employment of professional persons in bankruptcy cases.

H.R.Rep. No. 764, 99th Cong., 2d Sess. 24 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5227, 5237.

Although the Report notes that the U.S. Trustee "may comment to the court through pleadings, motions or other appropriate filings on any of the matters listed above," *id.* at 24–25, 1986 U.S.C.C.A.N. at 5237, in discussing the standing of the U.S. Trustee the Report did not limit it to the specific duties referred to above. Thus, the Report states:

> The U.S. Trustee is given *standing* to raise, appear, and be heard *on any issue in any case* or proceeding under title 11, U.S.Code—except that the U.S. Trustee may not file a plan in a chapter 11 case. In this manner, the *U.S. Trustee is given the same right to be heard as a party in interest,* but retains the discretion to decide when a matter of concern to the proper administration of the bankruptcy laws should be raised.

*Id.* at 27, 1986 U.S.C.C.A.N. at 5240 (emphasis added).

Reflecting this intent, Congress enacted 11 U.S.C. § 307 in 1986, which provides that "[t]he United States trustee may raise and may appear and be heard *on any issue in any case or proceeding* under this title but may not file a plan pursuant to section 1121(c) of this title" (emphasis added). It is difficult to conceive of a statute that more clearly signifies Congress's intent to confer standing.

■ The issue of the U.S. Trustee's standing was recently considered by this court in *United States Trustee v. Price Waterhouse,* 19 F.3d 138 (3d Cir.1994). In that case we held, relying on section 307 and the legislative history referred to above, that the U.S. Trustee had standing to object to the appointment of a non-"disinterested" financial advisor for the estate, even though no creditor objected. *See id.* at 141.

Our decision that the U.S. Trustee has standing in this case is consistent with those of the other courts of appeals that have rejected various challenges to the U.S. Trustee's standing. These courts have relied on the language of section 307 and on the concept that the U.S. Trustee's duties under the Bankruptcy Code give the Trustee public interest standing, rejecting the argument that the Trustee must assert some sort of pecuniary interest.

In *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.),* 898 F.2d 498, 499 (6th Cir.1990), the Sixth Circuit held that the U.S. Trustee had standing to appeal the bankruptcy court's decision not to appoint an examiner under 11 U.S.C. § 1104(b)(2):

> The Supreme Court has held that a *public* interest may also give a sufficient stake in the outcome of a bankruptcy case to confer appellate standing. The United States trustee, an officer of the Executive branch, represents such a public interest.... As Congress has stated, the U.S. trustees are responsible for "protecting the public interest and ensuring that bankruptcy cases are conducted according to [the] law." [H.R.Rep. No. 595, 95th Cong., 2d Sess. 109 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6070]. That is the interest the U.S.

trustee has pursued in this case, and that interest gives him standing to appeal. *Id.* at 499–500 (citations omitted).

The First Circuit relied on *Revco* in *In re Plaza de Diego Shopping Center, Inc.*, 911 F.2d 820 (1st Cir.1990), where it held that the U.S. Trustee maintained standing to appeal the district court's appointment of a trustee. As in *Revco*, the court derived "the U.S. Trustee's interest from his statutory responsibility to represent and protect the public." *Id.* at 824. Similarly, in *In re Clark*, 927 F.2d 793 (4th Cir.1991), the Fourth Circuit held that the U.S. Trustee had standing to appeal the denial of a motion to dismiss a chapter 7 case for substantial abuse. The court analogized the standing of the trustee to that of the Securities and Exchange Commission (SEC) whose standing to litigate issues in bankruptcy in order to enforce laws in the public interest has been upheld by the Supreme Court in *SEC v. United States Realty & Improvement Co.*, 310 U.S. 434, 60 S.Ct. 1044, 84 L.Ed. 1293 (1940). *See Clark*, 927 F.2d at 796.

The majority of the bankruptcy and district court cases that have addressed the issue of the U.S. Trustee's standing have also found that the Trustee has standing in varied circumstances. In *In re St. George Island, Ltd.*, 137 B.R. 857, 859 (Bankr.N.D.Fla.1991), the court, finding that the U.S. Trustee had standing to challenge the election of a trustee, stated, "any doubts as to the standing of the United States Trustee to raise the issue of an election dispute and to be heard thereon is resolved by the provisions of 11 U.S.C. § 307." Additionally, in *Hayes & Son Body Shop, Inc. v. United States Trustee*, 124 B.R. 66, 68 (W.D.Tenn.1990), *aff'd mem.*, 958 F.2d 371 (6th Cir.1992), in finding that the U.S. Trustee had standing to object to the reasonableness of the attorney's fees sought by a chapter 11 debtor's attorney, the court noted that, "[t]he language, legislative history, and judicial interpretation of § 307 reveal that

Congress intended to enhance the role of the United States Trustee by permitting direct involvement in bankruptcy proceedings." *See also In re PHM Credit Corp.*, 110 B.R. 284, 286 (E.D.Mich.1990) (U.S. Trustee has standing to appeal appointment of debtor's counsel); *In re Speece*, 159 B.R. 314, 317 (Bankr.E.D.Cal.1993) (section 307 is a "sweeping authorization" that grants U.S. Trustee standing to object to debtor's settlement with one creditor); *In re Costello*, 150 B.R. 675, 678 (Bankr.E.D.Ky.1992) (section 307 imbues U.S. Trustee with standing to seek reduction of chapter 7 debtors' counsel's fee request); *In re BAB Enters., Inc.*, 100 B.R. 982, 985–86 (Bankr.W.D.Tenn.1989) (U.S. Trustee has standing to contest reasonableness of attorney's fee debtor agreed to pay lessor as part of consent order).

The Debtors contend that the standing of the U.S. Trustee is not as unlimited as the language of section 307, its legislative history, and these cases suggest. However, even if we were to agree with the Debtors that, despite the broad language of the statute and the legislative history, there are limits imposed by the Constitution on the U.S. Trustee's standing in bankruptcy cases, such a challenge cannot prevail in this case because of the supervisory powers maintained by the U.S. Trustee over section 345.

Section 345 provides that the U.S. Trustee must approve of corporate sureties employed under that section. *See* 11 U.S.C. § 345(b)(1)(B). This assignment represents a shift from the bankruptcy courts to the U.S. Trustee of the responsibility for overseeing the investment of bankruptcy estate funds.

Section 61 of the Bankruptcy Act of 1898 gave the bankruptcy courts direct supervisory duties over invested bankruptcy funds.[1] In 1939, General Order 53 supplemented section 61 and assigned the bankruptcy judges even more duties with respect to overseeing

---

1. Section 61 provided:

Courts of bankruptcy shall designate, by order, banking institutions as depositories for the money of bankrupt estates, as convenient as may be to the residences of trustees, and shall require bonds to the United States, subject to their approval, to be given by such banking institutions, and may from time to time as occasion may require, by like order increase the number of depositories or the amount of any bond or change such depositories.
Act of July 1, 1898, ch. 541, § 61, 30 Stat. 544, 562 (codified as amended at 11 U.S.C. § 101) (repealed 1978).

the investment of bankruptcy estate funds. *See* Bankruptcy General Order 53, 305 U.S. 713–15 (1939).[2] When the Bankruptcy Rules of Procedure were adopted in 1973, Rule 512 supplemented section 61 and superseded General Order 53. *See* Fed.R.Bankr.P. 512, 411 U.S. 1059–61 (1972). Rule 512 provided that the bankruptcy referees were to "designate by order banking institutions as depositories for the money of estates," and bankruptcy estate funds could be deposited only in those depositories. *Id.* The referees could demand a new bond from a depository if it appeared that the prior bond did not constitute adequate security. *See id.* Finally, in 1983, Bankruptcy Rule 5008, which was based on the formerly applicable Rule 512, was promulgated and contained similar guidelines governing how bankruptcy estate funds could be invested. *See* Fed.R.Bankr.P. 5008.

The leading bankruptcy commentator has remarked that the effect of the enactment of the Bankruptcy Code in 1978 with its creation of the U.S. Trustee Program, "greatly reduces the role of the bankruptcy judge with regard to such investment ... in conformance with the general policy of the Bankruptcy Code to separate the bankruptcy court as a judicial body from involvement in the administration of the estate." 2 *Collier on Bankruptcy* ¶ 345.02, at 345–12 (Lawrence P. King ed., 15th ed. 1994). As noted above, many of these duties have devolved on the U.S. Trustee. The nexus between the responsibilities of the U.S. Trustee and the investments of the assets of a debtor's estate is evidenced by the fact that former Rule 5008 dealing with such investments did not apply in districts where there was a United States trustee. Even more explicit is the statement of the Advisory Committee in 1991 that Rule 5008 was "abrogated in view of the amendments to § 345(b) of the Code and the role of the United States trustee in approving bonds and supervising trustees." Fed.

R.Bankr.P. 5008 advisory committee's note (1991).

The Debtors contend that the duties of the U.S. Trustee are limited to approving bonds under section 345(b) and because that section can be waived by the bankruptcy court or, if mandatory, the bond option would not be chosen, the U.S. Trustee in fact has no duties that would be interfered with. The Debtors' argument confuses standing with the merits. It is precisely because the statute gives the U.S. Trustee duties to protect the public interest under section 345(b) that the Trustee has standing to attempt to prevent circumvention of that responsibility.

A similar argument against the standing of the SEC was rejected by the Supreme Court in *United States Realty*, 310 U.S. at 461, 60 S.Ct. at 1055–56. In that case, a debtor with a large amount of unsecured debt in the form of securities filed a bankruptcy petition under chapter XI, rather than under chapter X which gave the SEC statutory duties designed to protect the securities' holders. The SEC sought to intervene and appeal whether the debtor's chapter XI petition should be dismissed. Although the debtor challenged the SEC's right to do so, the Court found that the SEC had an interest in the case because its duties under chapter X would be thwarted if the debtor could proceed under chapter XI. The Court reasoned:

> The Commission is ... charged with the performance of important public duties in every case brought under Chapter X, which will be thwarted, to the public injury, if a debtor may secure adjustment of his debts in a Chapter XI proceeding when ... he should be required to proceed ... under Chapter X. The Commission's duty and its interest extends not only to the performance of its prescribed functions where a petition is filed under Chapter X, but to the prevention ... of interferences with their performance through improper

---

**2.** General Order 53 required each depository to file a written disclosure statement every January with the bankruptcy court detailing whether any sureties had moved out of the judicial district and whether any sureties were in financial trouble. *See* Bankruptcy General Order 53. If the depository's bankruptcy deposits equaled at least 95% of its bankruptcy bond, the depository had

to file a written statement to the court detailing the amount of those deposits and the bond. *See id.* The bankruptcy judges were charged with requiring the depositories to give new bonds at least every five years and obtain a new bond when it appeared the prior bond was insufficient or a surety had left the judicial district. *See id.*

resort to a Chapter XI proceeding in violation of the public policy of the Act which it is the duty of the court to safeguard by relegating respondent to a Chapter X proceeding. The Commission ... object[s] to an improper exercise of the court's jurisdiction which, if permitted to continue ... would defeat the public interests which the Commission was designated to represent. *Id.* at 458–59, 60 S.Ct. at 1054–55. Similar reasoning requires permitting the U.S. Trustee to have standing when his statutory duties under section 345(b) would be circumvented if compliance with that statutory provision were not mandatory.

The Debtors additionally contend that, as a factual matter, they would never invest under section 345(b)'s bonding option and, since that is the only area in which the U.S. Trustee has duties, his duties are not being interfered with because whatever the outcome of this case, those duties will not come into play. However, we decline to view the U.S. Trustee's standing so narrowly. The broader role of the U.S. Trustee was fully outlined in the House Report noted above. Congress was cognizant that the U.S. Trustee would have no pecuniary interest in the cases, and the House Report recognized that one of the principal advantages of the new system was that the Trustee "functions only as an impartial administrator." H.R.Rep. No. 764, *supra*, at 27, 1986 U.S.C.C.A.N. at 5227, 5240. Traditional notions of public interest standing and Congress's broad grant of standing in the form of section 307 amply support the need to hear the Trustee on matters such as this, particularly where there is no other party interested in bringing the statute to the courts' attention.

The Debtors cite two bankruptcy court cases in which the U.S. Trustee was held not to have standing. Even if they were precedential, they would be distinguishable. In *In re Eaton*, 130 B.R. 74, 76–77 (Bankr. S.D.Iowa 1991), the court found that the U.S. Trustee had no standing to object to a confirmation of a plan because the Trustee's power to do so was expressly limited by other provisions of the Code. There is no similar express limitation here. In the other case, *In re Washington Manufacturing Co.*, 123 B.R.

272, 276 (Bankr.M.D.Tenn.1991), the court held that intervention by the U.S. Trustee was unnecessary because it appeared that the estate trustee was adequately representing the U.S. Trustee's view. In contrast, in this case the U.S. Trustee is the only party raising the matter at issue.

In light of the plain language of section 307, general policies of public interest standing, and the overwhelming weight of the case law, we hold that the U.S. Trustee has standing in this case.

## B. *Section 345*

We turn therefore to the interpretation of the scope of section 345. That provision, entitled "Money of estates," provides:

(a) A trustee in a case under this title may make such deposit or investment of the money of the estate for which such trustee serves as will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment.

(b) Except with respect to a deposit or investment that is insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States, the trustee shall require from an entity with which such money is deposited or invested—

(1) a bond—

(A) in favor of the United States;

(B) secured by the undertaking of a corporate surety approved by the United States trustee for the district in which the case is pending; and

(C) conditioned on—

(i) a proper accounting for all money so deposited or invested and for any return on such money;

(ii) prompt repayment of such money and return; and

(iii) faithful performance of duties as a depository; or

(2) the deposit of securities of the kind specified in section 9303 of title 31 [obligations of the federal government].

(c) An entity with which such moneys are deposited or invested is authorized to deposit or invest such moneys as may be required under this section.

11 U.S.C. § 345 (1988).

The district court found that subsection (b) contains clear and unambiguous requirements which the bankruptcy court, in its equitable discretion, cannot waive or modify. The court stated that "§ 345 is not ambiguous, that its provisions [ (a) and (b) ] are not internally inconsistent, that the plain language of the statute requires that investments comply with the requirements of § 345(b) and that such an interpretation of § 345(b) does not render the language of § 345(a) mere surplusage." District court op. at 3.

When a statute is clear and unambiguous, the courts must give effect to Congress's intent as Congress expressed it with that writing. *See K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 290, 108 S.Ct. 1811, 1817, 100 L.Ed.2d 313 (1988) ("If the statute is clear and unambiguous 'that is the end of the matter, for the court … must give effect to the unambiguously expressed intent of Congress.'"); *Price Waterhouse*, 19 F.3d at 141 ("As the Supreme Court and our court have repeated many times in recent years, when statutory language is clear and unambiguous it ordinarily must be followed."). Section 345 is clear in making the requirements of subsection (b) mandatory. *See 2 Collier on Bankruptcy, supra,* ¶ 345.05, at 345–15 ("The provisions of subsection (b) of section 345 are mandatory and do not give the trustee any discretion with regard to compliance.").

The Debtors argue that even unambiguous language in the Bankruptcy Code will not end judicial inquiry where "the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *Legacy, Ltd. v. Channel Home Ctrs. (In re Channel Home Ctrs.)*, 989 F.2d 682, 687 (3d Cir.) (quotations omitted), *cert. denied,* —— U.S. ——, 114 S.Ct. 184, 126 L.Ed.2d 143 (1993). They assert that Congress's aim in passing the statute was to expand the discretion of trustees so that higher rates of return could be obtained for bankruptcy estate funds, and that compliance with subsection (b) would defeat that purpose by leaving them with no discretion in how they invest their funds and forcing them to accept a low rate of return. They explain that, as a practical matter, under subsection (b) large estates will have the singular option of investing directly in government securities. If they chose the bonding option the surety providing the bond would itself have to invest in government securities, thereby charging the debtor or trustee a premium and giving the debtor a lower return than it could receive from investing directly in government securities.

It does not follow that because the Debtors' options under subsection (b) are restricted, such a construction is necessarily at odds with the intent of Congress in passing the statute. A literal construction represents the balance that Congress struck between "safety" and a "maximum reasonable net return," albeit a balance different than the one the Debtors, or even the bankruptcy court, would choose. Nor is such an admittedly restrictive construction inconsistent with Congress's intent to expand investment opportunities.

Before the enactment of section 345 there was no option to invest in government securities. Instead, a trustee was limited to depositing money with banking institutions. The legislative history reflects Congress's regard of that step as significant. The House Report states:

> This section is a significant departure from section 61 of the Bankruptcy Act. It permits a trustee in a bankruptcy case to make such deposit [or] investment of the money of the estate … as will yield the maximum reasonable net return on the money, taking into account the safety of such deposit or investment. *Under current law, the trustee is permitted to deposit money only with banking institutions.* Thus, the trustee is generally unable to secure a high rate of return on money of estates pending distribution, to the detriment of creditors. *Under this section, the trustee may make deposits in savings and loans, may purchase government bonds, or make such other deposit or investment as is appropriate.*

H.R.Rep. No. 595, 95th Cong., 1st Sess. 333 (1977) (emphasis added), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5963, 6289.

The Debtors focus on the last phrase "or make such other deposit or investment as is appropriate" to support their contention that Congress intended to grant trustees the discretion to invest in more than just government securities. However, the language is just as consistent with a reference to the option between bonded accounts or government-insured bank accounts.

The House Report is as unambiguous as the statutory language in its direction that compliance with subsection (b) is mandatory. Immediately following the excerpt quoted above, the Report continues:

> In order to protect the creditors, subsection (b) *requires* certain precautions against loss of the money so deposited or invested. The trustee must require from a person with which he deposits or invests money of an estate a bond in favor of the United States secured by approved corporate surety and conditioned on a proper accounting for all money deposited or invested and for any return on such money. Alternately, the trustee may require the deposit of securities of the kind specified in section 15 of title 6 of the United States Code, which governs the posting of security by banks that receive public moneys on deposit. These bonding requirements do not apply to deposits or investments that are insured or guaranteed by the United States or a department, agency, or instrumentality of the United States, or that are backed by the full faith and credit of the United States.

*Id.,* 1978 U.S.C.C.A.N. at 5787, 6289–90 (emphasis added). The legislative history, like the language of the statute, plainly directs that the discretion granted under subsection (a) is limited by the requirements of subsection (b).

The Debtors contend that reading the two subsections together is misleading because their drafts originated in Congress years apart. Whatever their original genesis, they were enacted at the same time and are discussed together in the congressional report.

It follows that they must be read in conjunction with each other.

Reading section 345(b) as mandatory is in keeping with Congress's long history of strictly limiting how bankruptcy funds can be invested. Beginning with the Bankruptcy Act of 1898 up to the enactment of section 345 in 1978, bankruptcy estate funds could only be deposited with designated depositories or, after 1935, with banks insured under the Federal Reserve Act. *See 2 Collier on Bankruptcy, supra,* ¶ 345.01, at 345–2 to 345–11. Ensuring the safety of the bankruptcy funds has been the foremost goal.

The Debtors argue that if they comply with subsection (b) of section 345 they will be unable to achieve the "maximum reasonable net return" on the money invested as required by subsection (a). Thus, they argue, reading subsection (b) as mandatory would render subsection (a) meaningless, thereby violating the rule of statutory construction that every statutory section should be given meaning.

However, there is still room for operation of subsection (a)'s general statement of the goals and parameters that a trustee should follow. Even with the limitation of discretion provided by subsection (b), the trustee must still take notice of subsection (a)'s admonishment to invest estate funds and not let them lay idle. *See In re J & J Record Distrib. Corp.,* 84 B.R. 364, 369 (E.D.Pa.1988) ("It is clear that although the trustee is not required under section 345(a) to invest the funds of the bankruptcy estate so as to obtain the maximum rate of return, the trustee is required to deposit the funds in interest-bearing accounts or to use the funds for an income-producing investment whenever it reasonably appears that a substantial amount of funds may remain idle for a long period of time."); *In re Charlestown Home Furnishing,* 150 B.R. 226, 227–28 (Bankr.E.D.Mo. 1993) (finding chapter 7 trustee liable for interest lost due to his negligent failure to deposit estate funds in an interest-bearing account for over a year, citing section 345(a)); *see also In re E.F. Hutton Southwest Properties II, Ltd.,* 953 F.2d 963, 974 (5th Cir. 1992) (discussing trustee's discretionary duty under section 345(a) not to let funds lay idle);

*In re Peckinpaugh,* 50 B.R. 865, 868 (Bankr. N.D. Ohio 1985) (same).

The interaction of subsections (a) and (b) requires investment of the estate's funds to obtain the best return possible from the available options taking safety into account. Presumably it embodies, for example, the rule under its predecessor, former Rule 512, which prohibited the deposit of bankruptcy estate funds if there was reason to believe that the bond or security offered for the deposit was or could become inadequate in view of the existing or expected deposits. *See 2 Collier on Bankruptcy, supra,* ¶ 345.01, at 345–10. Just as "the mere imposition of the duty to deposit funds in properly designated institutions under former Rule 512 did not eliminate liability for breach of the common law duties of reasonable care and prudence," *id.,* neither would section 345 permit the trustee to forego that responsibility.

Although there is still meaning for subsection (a) even if subsection (b) is mandatory, the converse would not be so. If subsection (a) were completely independent from subsection (b), as the Debtors advocate, subsection (b)'s specific requirements would indeed be rendered meaningless.

We do not deny that there may be persuasive arguments in support of the Debtors' position as a policy matter. We assume *arguendo* that their guidelines are prudent, conservative and safe, yet will net a far greater return than they will obtain under the rules of subsection (b). The Debtors note that their guidelines comply with SEC regulations for public utility holding companies and that the creditors' committees prefer their guidelines. However, these are arguments that should be directed to Congress. *See Price Waterhouse,* 19 F.3d at 142 ("If it is thought that [the proposed action should be allowed], an amendment of that provision should be sought from Congress."). Our obligation is limited to one of statutory interpretation; when a statute is clear and unambiguous, policy arguments cannot deflect us from that interpretation.

Similarly, the bankruptcy court cannot waive or modify Bankruptcy Code requirements that are plain and unambiguous because it agrees with the policy underlying the debtor's arguments. *See Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206, 108 S.Ct. 963, 969, 99 L.Ed.2d 169 (1988) ("whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code"); *Price Waterhouse,* 19 F.3d at 142 ("the appellees, like the bankruptcy court and the district court, stress the practical benefits ... however, 'bankruptcy courts cannot use equitable principles to disregard unambiguous statutory language' ").

The reported case law on this issue is sparse, and none of it is precedential. In one case a bankruptcy judge stated that he would allow the requirements of section 345(b) to be waived for a specific investment, *see In re S.S. Jupiter Seas, Inc.,* 1 Collier Bankr. Cas.2d (MB) 770 (Bankr.S.D.Fla.1980), but in a later case the same judge stated, "Congress did not intend to leave to the debtor's discretion nor to the discretion of this court compliance with the minimum requirements of § 345(b)." *In re Evans Products Co.,* 50 B.R. 13, 15 (Bankr.S.D.Fla.1985). In *Evans,* the judge ruled that subsections (a) and (b) "are not inconsistent and may be construed reasonably together without disregarding the unambiguous provisions in subparagraph (b)." *Id.* at 14; *see also In re Interco Inc.,* 130 B.R. 301, 303 (Bankr.E.D.Mo.1991) (although there may be some flexibility in requirements of subsection (b), debtor's investments in foreign banks must be collateralized as required by that section). Dictum in several opinions suggests that the requirements of section 345(b) are viewed as mandatory.[3]

---

3. *See Great Western Coal, Inc. v. Brown,* 146 B.R. 702, 712 (Bankr.S.D.Tex.1992) ("11 U.S.C. § 345 is crafted by Congress to protect debtor's assets for the creditors by insuring that all investments are either backed by the full faith and credit of the United States or that the trustee require a bond from the entity in which the money is deposited with stringent requirements in favor of the United States, with approval of the corporate surety issued by the United States Trustee, conditioned on rigorous accounting of funds."); *In re McLean Indus., Inc.,* 96 B.R. 440, 446–47 (Bankr.S.D.N.Y.1989) ("[Section 345] was enacted to give bankruptcy trustees flexability [sic] in investing estate funds, § 345(a), but *'[i]n order to protect the creditors,* subsection (b) requires cer-

Although as noted above we agree with this view, we rely for our holding not on snippets from other cases but on the clear statutory language, which finds support in the legislative history.

Nor do we see any support in the statute for the Debtors' contention that because section 345(b) speaks of what a "trustee" may do, it should be interpreted as applicable only to chapter 7 cases and not to chapter 11 cases. This argument overlooks the statutory provisions that debtors-in-possession have all the rights, powers and duties of a trustee, *see* 11 U.S.C. § 1107, and that "[e]xcept as provided in section 1161 of this title [relating to . cases involving railroads], chapters 1, 3 [which encompasses the provisions at issue here], and 5 of this title apply in a case under chapter 7, 11, 12, or 13 of this title," 11 U.S.C. § 103 (1988). By the inescapable language of the Bankruptcy Code, section 345 is applicable to chapter 11 cases.

### C. *Validity of the Debtors' Guidelines Under Section 345(b)*

Although it follows that the district court correctly held erroneous the bankruptcy court's order "reliev[ing the Debtors] from the obligation under Section 345(b) of the Bankruptcy Code of obtaining a bond from an entity with which the money is deposited or invested," App. at 15–16, it does not follow that none of the Debtors' investment guidelines satisfy section 345(b). The Debtors argue that the magistrate judge erred in holding that the investments in repurchase agreements permitted by their guidelines violate section 345(b). We agree with the Debtors that that issue is one that should be decided by the bankruptcy court in the first instance, after making findings as to the nature of the repurchase agreements. To the extent that the district court's order *sub silentio* adopted that portion of the magistrate judge's report, it will not be affirmed.

### III.

In this case we once again adhere to the principle that when Congress has expressed itself in clear and unambiguous language, we will enforce its will as written. Therefore, in conformance with the plain language of 11 U.S.C. § 345, we hold that trustees must comply with the requirements of section 345(b) when investing bankruptcy estate funds. We express no opinion as to how this should be accomplished in the present case except to suggest to the district court and the bankruptcy court the need to implement the statutory guidelines in a gradual manner that will not have undue adverse effect on the parties involved.

We will affirm the order of the district court except to the extent that it may have ruled on the repurchase agreements, and remand this matter to the district court for further proceedings consistent with this opinion.

---

tain precautions against loss of the money so deposited or invested.' Those 'precautions,' require the trustee to obtain a secured bond in favor of the United States and thereby ensure that the funds will be available for distribution to creditors." (citations omitted)); *see also Laughlin v. United States I.R.S.*, 912 F.2d 197, 202 (8th Cir.1990) (Magill, J., dissenting) ("In addition, 11 U.S.C. § 345 authorizes the Chapter 13 trustee to deposit or invest 'money of the estate,' subject to specified restrictions that protect plan creditors from loss."), *cert. denied*, 498 U.S. 1120, 111 S.Ct. 1073, 112 L.Ed.2d 1179 (1991).