**In re Nancy B. MOON, Debtor.**

**No. 97–00203–GVL1.**

United States Bankruptcy Court,
N.D. Florida,
Gainesville Division.

Feb. 9, 2001.

Tom Copeland, High Springs, FL, for Debtor.

Donald Walton, Office of the U.S. Trustee, Atlanta, GA, trustee.

## MEMORANDUM OPINION ON APPLICATION FOR CHAPTER 7 TRUSTEE COMPENSATION

LEWIS M. KILLIAN, Jr., Bankruptcy Judge.

THIS MATTER came on for hearing on the Application for Compensation and Ex-

penses for Trustee filed by Donald F. Walton, successor trustee of this estate, on behalf of the prior trustee, J. Ellon Frier, deceased. The application requests an award of $14,907.02 in compensation based on the maximum allowable under 11 U.S.C. § 326(a). Debtor Nancy B. Moon, who will be receiving surplus proceeds from the estate, objects to the amount of the trustee's compensation based on several alleged deficiencies in the administration of the estate.

The issue presented in this case is whether the Chapter 7 trustee's fee application should be reduced or stricken due to delay in the administration of the estate, loss of income due to the manner in which the estate funds were invested, and IRS penalties and interest resulting from the failure to timely pay taxes. The answer involves the interplay between Bankruptcy Code sections 704, 330, 326, Bankruptcy Rule 2016, and the interpretive case law. This Court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157, and 1334. Based on a review of the record, the evidence presented at hearing, and having considered the arguments of counsel, I make the following findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052.

### Factual and Procedural History

This case has taken a somewhat lengthy and tragic course. It commenced with the May 14, 1997 filing of a voluntary petition for relief under Chapter 7. Mark Freund was appointed as trustee. Finding no assets to administer, Freund filed a Report of No Distribution on July 9, 1997. The case was closed on February 6, 1998.

On June 30, 1998, the debtor filed a motion to reopen the case so the trustee could administer a pre-petition sex discrimination claim. The debtor's action against the Sheriff of Alachua County and the City of High Springs (Florida) was not listed in her previously filed schedules and statement of affairs. The case was reopened with J. Ellon Frier appointed as trustee. The sex discrimination action went to trial subsequent to the reopening of the case, and resulted in a verdict of $272,220.94 for the debtor. An appeal was filed. On April 6, 1999 a settlement was reached, reducing the award to $245,000.00. That sum was received by the trustee on April 16, 1999 and deposited in her trustee money market account with Chase Manhattan Bank.

Prior to her receipt of the settlement funds, the trustee notified the Clerk of the Bankruptcy Court that there would be funds available for distribution to creditors, and requested the setting of a claims bar date. The notice to creditors to file claims was issued on October 2, 1998. The bar date was set for January 9, 1999. Only $2681.40 in unsecured claims were filed prior to the bar date, even though the debtor had scheduled over $30,000 in general unsecured claims. On April 24, 1999, following receipt of the settlement proceeds, the trustee sent letters to all scheduled creditors advising them of her receipt of the funds, and requesting them to file proofs of claim. This request resulted in the filing of additional claims totaling $57,578.41.

On August 8, 1999, the trustee applied for authority to employ Redford A. Cherry as accountant for the estate. That application was approved on August 31. Cherry prepared tax returns for the estate, and forwarded them to the trustee for signature and filing along with a section 505(b) request for prompt determination. The return was received and signed by the trustee on February 15, 2000. It reflected taxes due of $36,880.00.

Inexplicably, the trustee did not pay the taxes when she filed the return. On April 17, 2000, the IRS issued a Request for Payment, seeking taxes in the amount reflected on the return plus a penalty of $368.80 and interest of $284.21. The total due as of May 8 was 37,533.01. This sum remained unpaid. On May 22, the IRS issued a Notice of Intent to Levy which stated that additional penalties of $184.40

and interest of $324.38 were owed. The total due was now $38,041.79.

This case took a tragic twist when Chapter 7 trustee Frier was diagnosed with a recurrence of a previously diagnosed cancer. This occurred early in the administration of the case. For the majority of the time that she was administering this case, she was also fighting a losing battle against terminal illness. She passed away on May 2, 2000. On June 21, 2000 Donald F. Walton, Assistant United States Trustee for Region 21, was appointed as successor trustee to wrap up the administration of the estate. Mr. Walton filed a motion to authorize payment to the IRS of the $38,041.79 in taxes, penalties, and interest. The motion was approved and the check was issued on August 8, 2000. On November 16, 2000, the accountant was notified by the IRS of $1,951.61 in additional interest and penalties for the failure to pay the taxes when due. With that further amount due by November 30, 2000, the tax payment was made by the trustee on November 23. A total of $39,993.40 was paid to the IRS, against an initial tax liability of $36,880.00.

The trustee filed his notice of dividends to creditors, and issued checks in payment of 100% of all allowed claims, plus interest, on November 21, 2000. Creditors received total payments of $72,559.45, which included $12,299.64 in interest. After payment to creditors, the contingency fee for the attorney who obtained the settlement generating the funds, and administrative expenses (including those at issue here), the debtor would receive $18,778.37 as a distribution of surplus funds. Prior to the trustee's final report, when it was clear that there would be excess funds, the trustee sought and obtained approval of a partial distribution to the debtor of $10,000.

The debtor's objection to the trustee's fee request cites several grounds. The debtor asserts that the trustee's failure to timely administer the estate resulted in the unnecessary accrual of interest pay-able to creditors. The debtor calculated that the creditors ultimately received $3690.99 more in interest payments than they would have recovered if the trustee had paid the claims more quickly. The debtor charges that the trustee's deposit of the funds in a money market account instead of a higher yielding account resulted in a loss of interest. The debtor computed opportunity costs of $7652.00 in lost income to the estate, based on the timing of the return of excess funds back to the debtor. The debtor alleges that the failure to pay taxes when due resulted in additional tax liabilities of $3114.40. Finally, the debtor contends that the work performed by the trustee doesn't justify an award of the maximum allowed under §326(a) of the Bankruptcy Code, since the only asset in the case was the settlement obtained by special counsel. The debtor asks the Court to determine an appropriate fee pursuant to § 330 of the Code.

### Discussion

In this case, as in most cases filed under Chapter 7, the trustee did not maintain detailed time records of her activities in the administration of the case. Her death has precluded any effort to present a reconstructed summary of time spent on the case. Even if time records were available, this case highlights the dilemma facing courts and Chapter 7 panel trustees in determining an appropriate award in cases in which the trustee administers and distributes assets.

The vast majority of Chapter 7 cases filed in both this district and nationwide are closed as no asset cases. A recent statistical report of Bankruptcy Program Indicators prepared for this district by the Administrative Office of the United States Courts for the 12 month period ending September 30, 2000 indicates that out of 3977 chapter 7 cases filed, only 8% were reported as asset cases. When a no asset case is closed, the trustee is paid the handsome sum of $60.00 from the filing fee, regardless of the time or resources expended in administering that case. It

stands to reason that the fees earned from the relatively few asset cases provide the only means by which a Chapter 7 trustee can pay her overhead and earn a reasonable living. However, "the hope that a few large cases generating a large fee for the trustee to offset the losses realized from handling numerous small cases has not been realized in many jurisdictions." *In re Abraham*, 163 B.R. 772, 775–76 (Bankr. W.D.Tex.1994).

It is clear that the Chapter 7 trustees in this District need guidance from the Court with regard to the application of the Code sections and Bankruptcy Rules to their fee applications. The statutes define the duties of the trustee, provide the authority for trustees fees, delineate the upper limit of the fees, and offer a broad outline of the methods which the trustees should use to justify their fee requests. This Opinion, while addressing the unique features of the instant matter, will also serve as a guide to the trustees of this District regarding future applications for trustee compensation. The goal here is to ensure that while the diligence and hard work of Chapter 7 trustees who operate within the framework of the statute are rewarded accordingly, they are still held to justify larger awards.

Chapter 7 trustees are compensated for performing the work broadly outlined in section 704 of the Code. The trustee shall

(1) collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest;

(2) be accountable for all property received;

(4) investigate the financial affairs of the debtor;

(5) if a purpose would be served, examine proofs of claims and object to the allowance of any claim that is improper;

(9) make a final report and file a final account of the administration of the estate with the court and with the United States trustee.

11 U.S.C. § 704.

■■■ The primary duty of a Chapter 7 trustee is to collect and reduce to money the property of the estate as is compatible with the best interest of the parties at interest. *In re Feinstein Family Partnership*, 247 B.R. 502 (Bankr.M.D.Fla.2000). While collecting and reducing to money the property of the estate, it is the trustee's main duty to do so as expeditiously as possible. *See Yadkin Valley Bank & Trust Co. v. McGee (In re Hutchinson)*, 5 F.3d 750, 753 (4th Cir.1993). A bankruptcy trustee is a fiduciary of the estate's creditors, and his duty to collect and conserve the assets of the estate and to maximize distribution to the creditors is a fiduciary obligation. *In re Melenyzer*, 140 B.R. 143, 154 (Bankr.W.D.Tex.1992). A bankruptcy trustee may be held personally liable for a breach of his fiduciary duty. *United States, et al. v. Grant, et al. (In re George Schumann Tire and Battery Co., Inc.)*, 145 B.R. 104, 107 (Bankr.M.D.Fla. 1992) *citing to Mosser v. Darrow*, 341 U.S. 267, 71 S.Ct. 680, 95 L.Ed. 927 (1951). "Such liability may attach as a result of negligent ... violations of the fiduciary duties." *In re San Juan Hotel Corp.*, 847 F.2d 931 (1st Cir.1988).[1]

■ There is hardly any doubt that upon the showing of surplus funds in the estate after distribution to creditors, a Chapter 7 debtor is considered a party in interest. This is so because under § 726 all surplus funds shall be returned to the debtor. *United States, et al. v. Grant, et al. (In re George Schumann Tire and Battery Co., Inc.)*, 145 B.R. 104, 107 (Bankr.M.D.Fla.1992). Standing exists when there is sufficient money to allow for

---

1. *See also Connecticut General Life Ins. Co. v. Universal Ins. Co.*, 838 F.2d 612 (1st Cir. 1988); *In re Gorski*, 766 F.2d 723 (2nd Cir. 1985); *In re Cochise College Park, Inc.*, 703 F.2d 1339 (9th Cir.1983); *Ford Motor Credit Co. v. Weaver*, 680 F.2d 451 (6th Cir.1982); *Sherr v. Winkler*, 552 F.2d 1367 (10th Cir. 1977).

a distribution to the debtor pursuant to 11 U.S.C. § 726(a)(6). *In re Vogt,* 250 B.R. 250, 252 (Bankr.M.D.La.2000). Thus, the trustee owed fiduciary duties to the debtor, and the debtor has standing in the instant matter to challenge the fee request of the trustee.

■ In addition to the Trustee's fiduciary duties, the Trustee performs numerous services, although not every service is performed by every trustee in every case. *See In re Abraham* at 783.[2] The trustee is compensated for services rendered to the estate in the case, not for the duties given to him. *In re Jenkins,* 171 B.R. 104, 106 (Bankr.S.D.Cal.1994). In order to support those services, the trustee expends considerable sums on overhead, including but not limited to amounts spent on clerical and secretarial; postage; general and case-specific bookkeeping and accounting; asset acquisition, salvage, storage, sale and disposal; office rent and utilities; computers, equipment, and supplies; required reporting; and legal expenses. *Id.* at 775. This overhead represents fixed and semi-variable costs to the trustee regardless of the existence or amount of compensation recovered by the trustee. An unsuccessful action for turnover can negatively affect the trustee's net profitability on a case. A successful challenge to a debtor's discharge does not yield a positive return to the trustee's fee.

Section 330 of the Code provides the authority for payment, and details the inquiry to be used by the Court in determining the amount of compensation due to the Trustee:

(a)(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, an examiner, a professional person employed under section 327 or 1103—

(A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by any such person; and

(B) reimbursement for actual, necessary expenses.

(2) The court may, on its own motion or on the motion of the United States Trustee, the United States Trustee for the District or Region, the trustee for the estate, or any other party in interest, award compensation that is less

2. The Trustee Compensation/Expense Guidelines (Region 7) dated January 30, 1992 collected cases that attempted to define one or another aspect of "trustee services." Here are some of the items courts have identified as "trustee services" in published decisions: Collecting accounts receivable; routine demands and negotiations; presenting simple, uncontested motions for sale; preparing a liquor license renewal; advertising the sale of assets; contacts with prospective purchasers; locating buyers for assets; attending an auction, preparing the auction report, and arranging for payment of auction proceeds; selling estate real estate; delivering a bill of sale; arranging insurance coverage; supervising bank transactions; investing funds, and maintaining records therefor; reviewing the debtor's schedules; reviewing assets; investigating the existence of security interests; attending the § 341 meeting; investigating the debtor's business affairs; obtaining the debtor's books and records; reviewing accounts receivable records; reviewing title reports; arranging for an appraisal; reviewing the claims register; corresponding regarding documentation of claims; preparing and filing objections to claims; responding to inquiries concerning claims; corresponding with creditors regarding the status of a case or status of property of the estate; working on trustee reports; preparing the final report; preparing distribution schedules; conferring with attorneys; furnishing tax information; ascertaining tax liability; preparing applications to employ professionals; corresponding with an auctioneer; coordinating activities with disbursing agents and accountants; organizing pleadings and document files; reviewing creditor notices; meetings with debtor's counsel; paying routine bills; supervising debtor's employees; preparing form documents; testifying at hearings; miscellaneous matters.
The list goes on for four pages, concluding, in capital letters, "THIS LIST IS NOT INTENDED TO BE EXHAUSTIVE."

than the amount of compensation that is requested.

(3)(A) In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

(E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

(4)(A) Except as provided in subparagraph (B), the court shall not allow compensation for—

(i) unnecessary duplication of services; or

(ii) services that were not—

(I) reasonably likely to benefit the debtor's estate; or

(II) necessary to the administration of the case.

11 U.S.C. § 330.

Section 330 only provides for "reasonable compensation" to the Trustee, but does not define what amount is "reasonable" for a particular case. *In re Abraham* at 783. Section 330(a)(2) authorizes the Court to award fees in amounts less than the Trustee's request. *In re Arius, Inc.*, 237 B.R. 843, 846 (Bankr.M.D.Fla. 1999). The Code sets the upper limit on

compensation for the trustee's services. 11 U.S.C. § 326. The Code reads as follows:

(a) In a case under chapter 7 or 11, the court may allow reasonable compensation under section 330 of this title of the trustee for the trustee's services, payable after the trustee renders such services, not to exceed 25 percent on the first $5,000 or less, 10 percent on any amount in excess of $5,000 but not in excess of $50,000, 5 percent on any amount in excess of $50,000 but not in excess of $1,000,000, and reasonable compensation not to exceed 3 percent of such moneys in excess of $1,000,000, upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims.

11 U.S.C. § 326(a). The interplay between sections 326 and 330 is discussed in *In re Vogt*.[3]

[Trustee] compensation is determined, and allowed, pursuant to § 330(a).... Section 326(a) imposes a statutory maximum upon compensation that can be allowed, pursuant to § 330(a), for a trustee in a bankruptcy case. [T]rustee maximum compensation under § 326(a) can be calculated upon ... "moneys disbursed to parties in interest other than the debtor...." Trustees do not earn money under § 326(a).... Compensation is subject to the other requirements of § 330, but is capped by § 326, no matter what the general provisions of § 330, if applied without the compensation cap, would allow to a trustee.

*In re Vogt*, at 258, 277.

■ Thus, a fee award is not guaranteed, and while the maximum fee award is set by section 326, fees are actually calculated and awarded under the authority of section 330. Armed with this authority,

---

**3.** Section 503(b) provides administrative expense priority to compensation allowed under § 330(a). Section 507(a) places such compensation into the first level of priorities of unsecured claims. Section 726(a)(1) places trustee compensation within the first final distribution priority. *In re Vogt* at 277.

bankruptcy courts in Florida have reduced trustees' fee applications. *See e.g. In re Harris,* 143 B.R. 957 (Bankr.M.D.Fla.1992) (trustee waited nine months between marshaling the assets and filing tax returns for the estate, and 3½ years between marshaling the assets and liquidating the estate; fees was reduced by 50%.); *In re The Kitchen Lady,* 144 B.R. 544 (Bankr. M.D.Fla.1992) (no appreciable trustee activity of record for 3½ of the 6½ years that the case was open, lost interest was estimated at $4981.00; trustee sustained a 50% reduction in the fee award.); *In re R. Kaufman Jewelers, Inc.,* 171 B.R. 905 (Bankr.S.D.Fla.1994) (Chapter 11 trustee administered the estate of the involuntary debtor for 14 months at a net operating deficit, case was then converted to Chapter 7 under same trustee; $42,000.00 in requested fees reduced to award of $4970.78 for the combined fees.).

In some cases, the trustee's fee application has either been denied outright or effectively eviscerated by subtracting excess costs and expenses from the fee awarded. *See e.g. In re H.E. Graf, Inc.,* 125 B.R. 604 (Bankr.E.D.Cal.1991) (trustee lost $2560.00 in interest on received funds, and incurred $1156.15 in unnecessary bond premiums; trustee sought fees of $4512.30 but collected nothing.); *In re Williams, et al.,* 159 B.R. 936 (Bankr.D.Colo.1993) (the trustee removed estate funds from an interest bearing account, IRS priority tax claim wasn't paid until almost four years after the petition was filed; trustee's fee request was denied.).

■ Beyond the efficient and effective management of the estate, the trustee is charged with the duty of providing an accurate accounting of and justification for the fees requested. Bankruptcy Rule 2016(a) displays the parameters of the detail required by the Court for compensation for services rendered and reimbursement of expenses as follows:

(a) Application for compensation or reimbursement

An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested. An application for compensation shall include a statement as to what payments have theretofore been made or promised to the applicant for services rendered or to be rendered in any capacity whatsoever in connection with the case, the source of the compensation so paid or promised, whether any compensation previously received has been shared and whether an agreement or understanding exists between the applicant and any other entity for the sharing of compensation received or to be received for services rendered in or in connection with the case, and the particulars of any sharing of compensation or agreement or understanding therefor, except that details of any agreement by the applicant for the sharing of compensation as a member or regular associate of a firm of lawyers or accountants shall not be required. The requirements of this subdivision shall apply to an application for compensation for services rendered by an attorney or accountant even though the application is filed by a creditor or other entity. Unless the case is a chapter 9 municipality case, the applicant shall transmit to the United States trustee a copy of the application.

Fed. R. Bankr.P. 2016(a).

■ The rule requiring a detailed statement of services rendered, time expended, and expenses incurred is as applicable to a bankruptcy trustee as it is to all other fee applicants. *In re Baraban,* 106 B.R. 745 (Bankr.S.D.Fla.1989). Courts can reduce hourly rates, *see In re Neill,* 242 B.R. 685 (Bankr.D.N.D.1999), or deny fees to a trustee who fails to keep adequate records. *See Roderick v. Levy (In re Roderick),* 185 B.R. 601 (9th Cir. BAP 1995).

With regard to trustees' fee applications, this Court is bound to abide by section 330, Rule 2016, the factors outlined by *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974)[4], and *Johnson's* extension to the bankruptcy arena via *In re First Colonial Corp. of America,* 544 F.2d 1291, 1300 (5th Cir. 1977). However, I am sensitive to the contingent nature of the Chapter 7 trustees' fees.

■■ Under section 326, liquidation of a Chapter 7 estate of $50,000.00 yields a maximum trustee fee of $5,750.00. Outside the fish bowl of this case, a client receiving a bill for professional services in that amount would almost certainly require a detailed accounting of how the fee was earned, prior to authorizing payment of same. It would not be practical or economically feasible for Chapter 7 trustees to keep detailed time records in no asset or small asset cases. Yet, there is an equilibrium point where the benefit to the estate outweighs the detriment to the trustee.

■■ In future cases where the value of the Chapter 7 estate used in determining the proposed trustee fee exceeds $50,000.00, the Chapter 7 trustees in this District should provide an accounting that meets the guidelines of Bankruptcy Rule 2016, mindful of the relative weight that will be placed on the various *Johnson* factors by this Court. The failure to appropriately account for time spent on cases where the estate value exceeds $50,000.00 may cause future trustee fee applications to be reduced below the maximum allowable Chapter 7 trustee fee payable.

■■ In applying the *Johnson* factors to trustee compensation, the factor of the contingent nature of the fee will be accorded great weight so that compensation will not be limited by the number of hours expended times the trustee's normal hourly rate as a professional. To the extent that an award of the maximum compensation allowable under § 326(a) does not result in what would appear to be an unconscionable windfall when measured against the *Johnson* factors, trustees may reasonably expect to receive the maximum allowable fee. However, in situations where there is a substantial distribution with very little work actually required, trustees should not expect to receive the maximum fee award.

It is not the intent of this Court to add yet another layer of complexity to the fee application process, or to reduce the earnings of the Chapter 7 trustees. The parameters outlined above will not be applied retroactively in this case. Special circumstances may be addressed in the future on a case-by-case basis.

The facts in this case show that the trustee did not meet all of the duties owed the estate in a timely or efficient matter. At the outset, it is worth reinforcing the notion that the lack of detailed time records in this case makes it difficult, if not impossible, to quantify the trustee's fee under a traditional loadstar method. If this were a run-of-the-mill case, a fee reduction would be easy to justify. However, this is not the usual fee reduction case. The trustee was apparently slowed by her illness, and her inaction did not rise to the level of egregious behavior frequently associated with the fee reduction cases. Nonetheless, the estate has suffered substantial detriment due to the events chronicled above. Thus, a quantitative analysis of each component of the fee application is

---

4. The *Johnson* factors are (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or other circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

warranted, with any reductions from the maximum allowable fee to be calculated accordingly.

The debtor asserts that the trustee's fee should be reduced by the lost opportunity costs incurred when the settlement proceeds were placed in a commercial money market account instead of a higher yielding series of 30–day certificates of deposit. The trustee's reports show that the money market account paid a monthly interest dividend calculated on a variable rate that ranged from 1.9% to 2.3% on an annualized basis. Trial evidence shows that available 30–day CD rates during the period ranged from 3.50% to 5.05%. Rate differentials as high as 2.75% existed between the money market rates and those available on 30–day CDs.

Section 345 of the Code states that

[a] trustee in a case under this title may make such deposit or investment of the money of the estate for which such trustee serves as will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment.

11 U.S.C. § 345(a).

In the late 1980's, a line of cases followed a strict interpretation of section 345, suggesting that the trustee's duty to maximize investment income was discretionary due to the use of the word "may" in the Code. *See e.g.: Judge v. Pincus, Verlin, Hahn & Reich, P.C. (In re J & J Record Distributing Corp.),* 84 B.R. 364 (E.D.Pa. 1988); *Peoples Banking Co. et al. v. Derryberry (In re Peckinpaugh),* 50 B.R. 865 (Bankr.N.D.Ohio 1985). Some courts followed this line into the mid–1990's. *See e.g.: Gardere & Wynne v. Turoff (In re Hunt),* 196 B.R. 356 (N.D.Tex.1996).

By 1993, some bankruptcy courts were addressing the failure to maximize interest income to the estate within the larger context of a breach of the fiduciary duty owed by the trustee to the estate. *See In re Charlestown Home Furnishing,* 150 B.R. 226 (Bankr.E.D.Mo.1993). A decisive blow

favoring the mandatory duty to maximize investment income landed in *U.S. Trustee v. Columbia Gas Systems, Inc. (In re Columbia Gas Systems, Inc.),* 33 F.3d 294 (3rd Cir.1994). The Circuit Court held that subsections (a) and (b) of section 345 must be read *in pari materia* in order to give appropriate meaning to the section as a whole. *Id.* at 303. Citing to the legislative history contained in *H.R.Rep. No. 595,* 95th Cong., 1st Sess. 333, U.S.Code Cong. & Admin.News p. 5787 (1978), the *Columbia Gas* panel compared new section 345(b) to old section 61 from the old Bankruptcy Act. The new subsection loosened the former restrictions against active investment by trustees in order to effectuate the "maximum reasonable net return" to the estate. The 3rd Circuit interpreted the legislative history and the statutory language to hold that "[t]he interaction of subsections (a) and (b) *requires* investment of the estate's funds to obtain the best return possible from the available options taking safety into account." *Id.* at 302 (emphasis added).

In *In re Koch,* 195 B.R. 794 (Bankr. M.D.Fla.1996), the Chapter 7 trustee was negligent in causing the loss of over $7,000.00 to the estate by leaving funds in a non-interest bearing account for over 2½ years. She was held personally liable for that loss, and her application for compensation was denied. In *Matter of Accomazzo,* 226 B.R. 426 (D.Ariz.1998), the District Court affirmed the trial court's ruling that the permissive nature of the word "may," as used in § 345, did not preclude a finding that the trustee was negligent in failing to deposit funds in an interest-bearing account. The bankruptcy court could surcharge the trustee for failing to invest funds. *In re Accomazzo* provides a test to measure the negligence of a trustee with regard to investment decisions as follows:

The practical considerations involved in defining a trustee's duty to maximize the return on the bankruptcy estate's funds are: 1) the sum of funds subject to investment, 2) the duration of the trust-

ee's administration of the estate, 3) the time required by the trustee to manage the transfer of funds, and 4) the frequency with which a trustee needs to access those funds. When the practical considerations weigh in favor of investing the funds, absent other compelling justifications, a trustee may be found negligent for failing to do so.

*Id.* at 429–30.

 The issue of the permissive or mandatory nature of the investment maximization language in section 345(a) is a matter of first impression for this Court. Tracking the lead set forth in *Columbia Gas,* I will follow the "mandatory" interpretation of the 3rd Circuit. Trustees in this District shall strive to maximize the return on estate assets, while adhering to the investment safety guidelines contained in section 345(b). It should be noted that the reported cases deal with the all-or-nothing scenario of no interest versus maximized interest. The instant case is unique in that the trustee did earn some interest on the estate assets, but did not maximize the potential earnings. Following the "mandatory" application of section 345(a), I hold that the measure of damages to this estate is the difference between the interest that could have been earned and the interest that was actually earned.

Here, $245,000.00 was placed into the bankruptcy estate, meeting the substantiality test. The funds were held in the estate for 590 days (1.62 years). J. Ellon Frier, as trustee, had effective control of that money for 384 days (1.05 years). The money was deposited April 13, 1999. Ms. Frier passed away on May 2, 2000. The draw down of the money market account began August 8, 2000. The successor trustee's final report and application for compensation was filed September 27, 2000.

The trustee could have invested the bulk of the settlement proceeds in higher-yielding CDs, transferring funds from expired certificates into the money market account only when funds were needed to pay credi-

tors. In fact, the trustee's final report shows that no disbursements were made from the money market account until the successor trustee overtook the administration of the estate. Transfers between accounts can be performed quickly and easily. The unallocated money in the expired CDs could have been rolled over into similar investment vehicles until needed.

The Debtor's accountant calculated lost income at $7652.00, based on the monthly differential between what was earned and what reasonably should have been earned by the estate. The trustee did not present any argument or evidence to counter the accountant's calculation of the lost earning opportunity. However, the accountant's figure measures the period from April 13, 1999 through November 23, 2000. Trustee Frier's effective control of the money only included the period from April 13, 1999 through May 2, 2000. By comparing the differential in monthly interest income earned to the monthly interest income that should have been earned over that period, I calculate the lost interest income attributable to Ms. Frier to be $5491.80. The fee award shall be decreased by $5491.80.

 The debtor's allegation regarding the excess cost to the estate due to the delay in paying the estate's income tax liability was not answered by the trustee. I find that the trustee's fee application must reduced accordingly. The fee award shall be decreased by $3113.40.

 The debtor charges that the estate paid excess interest to the creditors in the amount of $3690.99. However, much of the delay associated with this portion of the administration of the estate is justifiable. Various objections to claims were made. The tax liability of the claim settlement was at issue. The trustee's illness must be factored into the equation. The overall time in which trustee Frier had the case, while perhaps longer than ideal, was not as long as the cases where fees were completely eliminated. I find that the debtor has not shown that the trustee's

conduct rose to the level of egregious, knowing, or intentional defalcation that would warrant a complete forfeiture of the trustee's fees. Accordingly, the trustee's fee award will not be reduced by any amount associated with the accountant's calculation of extra interest payments to the creditors.

### Conclusion

Therefore, it is ORDERED AND ADJUDGED that the trustee's application for compensation in the amount of $14,907.02 shall be reduced by $8605.20. The trustee shall be awarded $6301.82 in fees. A separate Order shall be issued forthwith.