In re William W. BEQUETTE and Debra L. Bequette, Debtors.

James W. McROBERTS and Mercantile Bank of St. Louis, N.A., Plaintiffs,

v.

S.I.V.I., 1801 North Belt West, Belleville, IL 62223, Defendant.

Bankruptcy No. 93–31018.
Adv. No. 94–3109.

United States Bankruptcy Court, S.D. Illinois.

July 7, 1995.

James W. McRoberts, Trustee, Belleville, IL.

John F. Sutherland, St. Louis, MO, for PLT Mercantile Bank.

John Johnston, Belleville, IL, for debtors.

Keith W. Kibler, Marion, IL, Lawrence Taliana, Edwardsville, IL, and John Vassen, Belleville, IL, for defendant.

## OPINION

KENNETH J. MEYERS, Bankruptcy Judge.

Chapter 13 debtors, William and Debra Bequette, failed to pay their 1989 real estate taxes on two parcels of property owned by them in St. Clair County, Illinois. One parcel was improved with a mobile home, while the adjacent parcel was vacant. The mobile home was subject to a lien in favor of Mercantile Bank of St. Louis N.A. ("Bank"), which was perfected by notation on the mobile home's certificate of title. On January 16, 1991, the St. Clair County Collector sold the debtors' property to the defendant, S.I.V.I., at a tax sale. On July 22, 1993, S.I.V.I. filed a petition for a tax deed and served the statutorily required notice of the pending expiration of the debtors' redemption period.[1]

---

1. Under the Illinois statute governing property taxes, formerly the Revenue Act of 1939, 35 ILCS 205/1 *et seq.* (1992), now the Property Tax Code, 35 ILCS 200/1-1 *et seq.* (1994), the tax purchaser must file a petition for a tax deed and serve notice of the pending expiration of the redemp-

On September 23, 1993, the debtors filed their Chapter 13 bankruptcy petition, listing the Bank as a secured creditor with a $21,000 lien on their mobile home. No mention was made on the debtors' schedules of the tax sale to S.I.V.I.[2] The debtors' Chapter 13 plan, confirmed on November 29, 1993, contained no reference to redemption from the tax sale of the debtors' property.

On December 17, 1993, the period of redemption from the tax sale expired. On January 5, 1994, without seeking relief from the automatic stay in the debtors' bankruptcy proceeding, S.I.V.I. applied to the circuit court of St. Clair County for an order directing issuance of a deed to the subject property. The tax deed was issued to S.I.V.I. and recorded on January 18, 1994.

In October 1994, James McRoberts, as trustee of the debtors' Chapter 13 estate, and the Bank as creditor filed the present adversary proceeding seeking relief for S.I.V.I.'s alleged violation of the automatic stay and its unauthorized postpetition transfer of the debtors' property. Count I of the plaintiffs' complaint alleged that subsequent to the debtors' bankruptcy filing, S.I.V.I. "continued to prosecute and/or allowed to continue proceedings ... to obtain [a] tax deed to the [debtors'] real estate" in violation of the automatic stay and, further, that S.I.V.I. violated Illinois law by failing to notify the trustee or the Bank of these proceedings as "interested parties." The plaintiffs asserted that "but for" S.I.V.I.'s failure to notify the plaintiffs of its application for a tax deed, the real estate "would have been redeemed prior to the expiration of the period of redemption." The plaintiffs, accordingly, sought damages under 11 U.S.C. § 362(h) for S.I.V.I.'s alleged violation of the stay.

Count II of the plaintiffs' complaint sought to avoid the transfer of the debtors' property to S.I.V.I. as an unauthorized postpetition transfer under 11 U.S.C. § 549. The complaint alleged that S.I.V.I., in obtaining a tax deed to the debtors' property, effected a transfer as defined in 11 U.S.C. § 101(54) and that this transfer, made without obtaining relief from stay or notifying "interested" parties, constituted an avoidable transfer under § 549. In both Counts I and II, the plaintiffs sought an order directing the defendant, S.I.V.I., to restore the real estate to the debtors subject to the payment to S.I.V.I. of the amount of taxes, penalty, and interest due under Illinois statute or, in the alternative, for judgment against S.I.V.I. in an amount equal to the value of the real estate minus any taxes and applicable penalties and interest due to S.I.V.I.

S.I.V.I. filed a motion to dismiss the plaintiffs' complaint for failure to state a cause of action. With regard to Count I, S.I.V.I. asserted that it was not necessary to seek relief from the automatic stay before applying for the tax deed at issue because the debtors, and thus the estate, lost all interest in the subject property upon expiration of the redemption period. S.I.V.I. further maintained that the plaintiffs were not "interested parties" entitled to notice of expiration of the redemption period under Illinois law and that S.I.V.I.'s tax deed, in any event, was incontestable except by appeal from the state court's order directing issuance of the deed.

With regard to Count II, S.I.V.I. asserted that any transfer of estate property that occurred after commencement of the debtors' bankruptcy case was not "unauthorized" within the meaning of § 549 because the debtors had only a right of redemption at the time of filing and this right terminated automatically upon expiration of the redemption period. S.I.V.I. contended, therefore, that the complaint failed to state a cause of action for avoidance of a transfer under § 549 and should be dismissed.

At hearing on S.I.V.I.'s motion, the parties asserted factual matters outside the pleadings that were not disputed. The Court, accordingly, construed the defendant's motion to dismiss for failure to state a cause of action as a motion for summary judgment

---

tion period not more than five months but not less than three months before the redemption period expires. *See* 35 ILCS 200/22–10; 35 ILCS 200/22–15; 35 ILCS 200/22–30 (1994).

**2.** The debtors did, however, schedule the St. Clair County Collector as an unsecured priority creditor holding a claim for 1991–1993 real estate taxes. No proof of claim was filed regarding this debt.

pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Fed.R.Civ.Proc. 12(b)(6).[3] Following the hearing, S.I.V.I. filed an additional motion to dismiss "for lack of authority." In this motion, S.I.V.I. alleged that the adversary proceeding brought by the trustee and the Bank was not in the debtors' best interests and that the plaintiffs were without standing to pursue such an avoidance action without proper authorization by the debtors. The Court took S.I.V.I.'s motion to dismiss under advisement along with its motion for summary judgment.

### I. *Plaintiffs' Standing under* *§ 362(h) and § 549*

S.I.V.I.'s motion to dismiss raises the preliminary question of whether the plaintiffs—the Chapter 13 trustee and the Bank as creditor of the debtors' estate—have standing to bring the present action under § 362(h) and § 549. Section 362(h) provides a private right of action for individuals injured by a violation of the stay:

> (h) An *individual* injured by any willful violation of a stay provided by [§ 362] shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362(h) (emphasis added). It is generally accepted that the remedy of § 362(h) extends to creditors as well as debtors who have sustained injuries from a violation of the stay. *See Homer Nat'l Bank v. Namie*, 96 B.R. 652, 655 (W.D.La.1989); *In re Prairie Trunk Ry.*, 112 B.R. 924, 929 (Bankr.N.D.Ill.1990). Courts are split, however, on whether the term "individual" in § 362(h) includes corporations as well as natural persons. *See In re Clemmer*, 178 B.R. 160, 166 (Bankr.E.D.Tenn.1995).

■ While § 362(h) provides an action for damages, § 549 allows for avoidance of transfers made in violation of the stay. Section 549 states in pertinent part:

> (a) [T]he *trustee* may avoid a transfer of property of the estate—
>
> (1) that occurs after commencement of the case; and
>
> . . . . .
>
> (2)(B) that is not authorized under this title or by the court.

11 U.S.C. § 549(a) (emphasis added). Unlike the remedy of § 362(h), only a trustee or debtor in possession may redress this type of stay violation—an unauthorized transfer of property—by seeking avoidance of the transfer. *See Matter of Pointer*, 952 F.2d 82, 86–87 (5th Cir.1992). Thus, under the statute's plain language, § 549 is an avoidance power belonging solely to the trustee or debtor-in-possession. *Id.*

■ Generally, the determination of a plaintiff's standing to seek requested relief requires two separate inquiries: first, whether the plaintiff has such a personal stake in the outcome of the controversy to warrant the invocation of the court's jurisdiction and justify exercise of the court's remedial powers on his behalf, and, second, whether the plaintiff has standing under the applicable statute. *Pointer*, at 85. The first inquiry, based on constitutional and prudential concepts, seeks to eliminate claims for which there has been no actual or threatened injury from the allegedly illegal conduct and limits access to the courts to those who would be best suited to assert a particular claim. To assert such standing, a plaintiff must allege (1) a personal injury (2) fairly traceable to the defendant's conduct, (3) which is likely to be redressed by the requested relief. *Id.* The second inquiry seeks to determine whether the plaintiff is the proper party to bring a claim under the statutory provision invoked by the plaintiff. This type of standing requires that the plaintiff come within that class of persons intended to benefit from the statute. *Id.* at 86.

---

**3.** Rule 12(b)(6), made applicable to this proceeding by Bankruptcy Rule 7012(b), provides that if, on a motion to dismiss for failure to state a cause of action, matters outside the pleadings are presented and not excluded by the court, the motion shall be treated as one for summary judgment

under Rule 56, and all parties shall be given an opportunity to present material made pertinent to such motion by Rule 56. *See* Fed.R.Civ.Proc. 56. The parties were afforded this opportunity by the Court's order of May 9, 1995.

█ In the present case, the plaintiffs' complaint alleges injury resulting from S.I.V.I.'s violation of the stay and unauthorized transfer in obtaining a tax deed to the debtors' real estate after the debtors' bankruptcy filing. It is not disputed that the real estate conveyed by the tax deed included the mobile home on which the Bank had a lien as personal property.[4] Under Illinois law, issuance of a tax deed following expiration of the tax sale redemption period extinguishes existing liens on property sold for taxes. *See In re Casper,* 156 B.R. 794, 799 (Bankr. S.D.Ill.1993). The tax deed issued to S.I.V.I., therefore, extinguished the Bank's lien on the mobile home and altered the Bank's status from that of a fully secured creditor to that of an unsecured creditor. Although the Court makes no finding concerning whether such a change in circumstances would constitute grounds for modification of the debtors' plan under 11 U.S.C. § 1329(a), if the debtors were allowed to modify their plan to treat the Bank as an unsecured creditor, the Bank's recovery would be diminished in that it would be paid pro rata with other unsecured creditors. Given the possibility that the Bank would receive less than the full amount of its claim as an unsecured creditor if the tax deed were not avoided in the present action, the Bank has alleged a sufficient injury resulting from S.I.V.I.'s conduct to give it standing to bring this action under constitutional and prudential principles.

█ The trustee's standing, on the other hand, depends not on whether he has alleged any personal injury or benefit to be derived from avoiding the tax deed to S.I.V.I. but whether this action is an appropriate exercise of his powers as a Chapter 13 trustee. The status of a Chapter 13 trustee differs from that of a Chapter 7 trustee, who is obligated to enhance the debtor's estate for the benefit of unsecured creditors. In a Chapter 13 case, the debtor retains control of his assets, and creditors are paid out of the debtor's future income and earnings rather than from any assets of the estate. *See In re*

*Ciavarella,* 28 B.R. 823, 825–26 (Bankr. S.D.N.Y.1983). A Chapter 13 trustee, unlike a Chapter 7 trustee, serves a limited administrative function of ensuring that the debtor's plan meets the standards for confirmation, objecting to claims, and paying approved claims according to the confirmed plan. *See* 11 U.S.C. § 1302; *In re Einoder,* 55 B.R. 319, 323 (Bankr.N.D.Ill.1985); *Ciavarella.* Thus, while a Chapter 13 trustee has statutory authority to avoid certain transfers, *see* 11 U.S.C. § 103(a) (Chapter 5 provisions authorizing trustee's avoidance of transfers apply in Chapter 13 cases), the trustee's standing to bring such actions depends on the effect the avoided transfer would have on the Chapter 13 debtors and their estate. Because of the peculiar role of the Chapter 13 trustee and the broad latitude available to Chapter 13 debtors, the trustee is not exclusively empowered to invoke the avoiding powers of the Code and may not do so in any event over the objection of the debtors. *Ciavarella,* at 827.

In this case, there is no indication that the Chapter 13 debtors wish to avoid the tax deed to S.I.V.I. in order to bring the mobile home property back into the estate and pay the Bank's lien through their plan. What is abundantly clear is that the Bank wants such avoidance in order to retain its status as a secured creditor of the debtors' estate. While the plaintiffs' complaint was filed in the name of both the trustee and the Bank, the Bank has been the party prosecuting the action with little or no input from the trustee. It was counsel for the Bank, not the trustee, who presented argument on the defendant's motion to dismiss and submitted extensive memoranda of law on the merits of the avoidance action. Indeed, at hearing on the defendant's motion to dismiss, the trustee acknowledged that he essentially lent his name to enable the Bank as a party "that needs to" to file a complaint and pursue this avoiding action on its behalf. The trustee further stated, in response to the Court's question as to how the trustee was injured by the defen-

---

4. At hearing the Bank acknowledged that the mobile home was part of the real estate conveyed by the tax deed. The Bank has, therefore, conceded any factual issue concerning whether the

mobile home became so affixed to the real estate as to become a fixture subject to real property law. *See generally In re Casper,* 156 B.R. 794, 799–801 (Bankr.S.D.Ill.1993).

dant's alleged violation of the stay, that the trustee was injured "to the extent we're talking about the injury to the Bank as plaintiff also." It appears, therefore, that the trustee's primary motivation in filing the present action was to protect the Bank's status as a secured creditor who would otherwise lose its lien as a result of the tax deed to S.I.V.I.

The trustee, meanwhile, has sought to justify his status as plaintiff by asserting that he is trying to protect the estate and redress an injury that resulted when S.I.V.I. took estate property without notice. Any such injury, however, was suffered by the Bank and not the debtors' estate since the property, if recovered, would come back into the estate encumbered by the Bank's lien.[5] *See Ciavarella*, at 826. The trustee further asserts that avoidance of S.I.V.I.'s tax deed is in the debtors' best interest because they are presently committed to pay the full amount of the mobile home debt to the Bank under their confirmed plan and, if the tax deed is not avoided, they would have to expend additional amounts to obtain housing, either by buying the mobile home back from S.I.V.I. or making a down payment or rent payments on other housing. The trustee concludes, therefore, that the tax deed must be avoided to prevent the debtors from essentially paying for the mobile home twice.

The Court finds the trustee's argument to be disingenuous and without merit. At the time of confirmation, the Bank's claim was secured by the debtors' mobile home and was to be paid in full under the plan.[6] Following confirmation, however, the Bank's lien was extinguished by issuance of the tax deed. If the tax deed were not avoided in this action, there would be no reason for the debtors to complete their plan as confirmed and pay the

Bank as a secured creditor while also paying for alternate housing.[7] Rather, they could seek modification of the plan in order to pay the Bank's claim as unsecured.

■■■ While the trustee is obligated to administer the debtors' plan as confirmed, it is not his responsibility to forestall any proposed modification by the debtors resulting from changed circumstances following confirmation of their plan. It is the debtors, not the trustee, who should make the determination of whether it is in their best interest to seek avoidance of the tax deed and pay the Bank for the mobile home through the plan or obtain alternate housing, even if that means repurchasing the mobile home from the tax purchaser. The trustee could certainly bring the present action on behalf of the debtors to seek avoidance of the tax deed if that were in the debtors' best interest. *See Einoder*, at 322. However, where there is no indication that the debtors or the estate would be benefited by avoidance of the tax deed and no showing of injury resulting from S.I.V.I.'s alleged violation of the stay, the trustee should not be allowed to pursue such action for the benefit of the Bank as secured creditor in order to protect the Bank's lien on the debtors' property. *See Ciavarella*, at 825 (Chapter 13 creditor is without standing to pursue avoidance action and may not enlist the trustee to assert the same cause of action). The Court finds, therefore, that the trustee has failed to allege sufficient injury or benefit to be derived from avoidance of S.I.V.I.'s tax deed to justify bringing the present action in his role as Chapter 13 trustee.

■■■ As indicated earlier, only a trustee or debtor in possession may seek avoidance

---

**5.** The debtors' petition values the subject real estate at $20,000, while the Bank, in argument to the Court, asserts that its value is $16,000. *See* Memo. in Opp. to Def.'s Mot. to Dismiss, filed Dec. 1, 1994, at 8. The Bank's lien securing an indebtedness of $21,796.70 is, therefore, undersecured, *see* Bank's Proof of Claim, filed Nov. 1, 1993, and recovery of this property would not benefit the debtors' estate.

**6.** As a claim secured by a security interest in the debtors' principal residence, the Bank's claim was not subject to modification under 11 U.S.C. § 1322(b)(5) at the time the plan was confirmed.

The debtors' plan thus provided for payment of the mobile home debt through the plan "as a continuing debt" and further provided for full payment of the arrearage on this debt over 24 months.

**7.** From the claims register in this case, it appears that the Bank's $21,796.70 claim on the mobile home is the debtors' major obligation and only secured claim. The debtors have four other unsecured creditors who filed claims in the total amount of $2,075.91.

of a transfer under § 549. Given this Court's finding that the trustee lacks constitutional standing to bring this action and given the Bank's lack of statutory standing, as a creditor, to proceed under § 549, Count II seeking avoidance of the tax deed to S.I.V.I. must be dismissed.

 With regard to Count I, the trustee lacks statutory, as well as constitutional, standing to seek damages for violation of the stay, as the remedy of § 362(h) is available to debtors and creditors only.[8] While the Bank has standing as a creditor, there is some question whether the Bank, as a corporation, is an "individual" entitled to seek damages for violation of the stay under § 362(h). The Circuit Courts of Appeal are split on what is meant by the term "individual," with the Third and Fourth Circuits holding that "individual" in § 362(h) includes corporations as well as natural persons, *see In re Atlantic Business & Community Corp.*, 901 F.2d 325, 328 (3d Cir.1990); *Budget Service Co. v. Better Homes of Virginia, Inc.*, 804 F.2d 289, 292 (4th Cir.1986) (§ 362(h) applies to corporate debtors), and the Second and Ninth Circuits concluding that the term refers only to natural persons. *See In re Chateaugay Corp.*, 920 F.2d 183, 185–86 (2d Cir.1990); *In re Goodman*, 991 F.2d 613, 619–20 (9th Cir.1993) (under plain meaning of statute, only natural persons entitled to damages under § 362(h)). The Seventh Circuit Court of Appeals has, as yet, made no ruling on the issue.

This Court finds the reasoning of the *Chateaugay* and *Goodman* courts persuasive and agrees that, under the plain meaning of the statute, the damages remedy of § 362(h) is limited to natural persons and is not available to corporate plaintiffs such as the Bank. *See also In re Midway Indus. Contractors, Inc.*, 178 B.R. 734, 737–38 (N.D.Ill.1995). However, even those courts finding that damages are unavailable to corporate entities under § 362(h) have observed that corporate plaintiffs injured by violations of the stay may obtain damages by invoking the court's civil contempt power. *See Chateaugay*, 920 F.2d at 186–87; *Goodman*, 991 F.2d at 620; *see also Matter of Ring*, 178 B.R. 570, 576–77 (Bankr.S.D.Ga.1995).

 Here, Count I of the Bank's complaint seeks damages under § 362(h) rather than pursuant to this Court's inherent authority to enforce its orders by awarding damages for violation of the stay. *See* 11 U.S.C. § 105(a). The Bank could, however, seek the same relief by repleading its complaint and bringing an action for civil contempt.[9] In the interests of judicial economy, therefore, the Court will consider the merits of the Bank's claim and determine whether the Bank, as set forth in Count I, is entitled to damages for S.I.V.I.'s alleged violation of the stay in obtaining a tax deed to the debtors' property.

## II. VIOLATION OF THE STAY

The Bank asserts that S.I.V.I. violated the stay by applying for a tax deed without notifying the Court or interested parties and thereby prevented the Bank from protecting its interest in the debtors' mobile home by redeeming from the tax sale. As set forth previously, the debtors' property was sold for taxes and S.I.V.I., as tax purchaser, filed a petition for a tax deed and served notice of the pending expiration of the redemption period prior to the debtors' bankruptcy filing. After commencement of the case, the redemption period expired, and S.I.V.I. applied for issuance of a tax deed to the property without seeking relief from the automatic stay.

The automatic stay prohibits certain affirmative acts, including judicial and administrative proceedings, taken against the debtor

---

**8.** The prayer for relief in Count I seeks both damages and avoidance of the transfer to S.I.V.I. Section 362(h), however, allows an award of damages only, and neither party could obtain avoidance of the alleged unauthorized transfer to S.I.V.I. under Count I.

**9.** Section 362(h) provides a more lenient standard for determining an award of damages than that required for civil contempt. *See Chateaugay*, 920 F.2d at 186–87; *see also Goodman*, 991 F.2d at 620 (primary difference between § 362(h) and civil contempt is the mandatory nature of an award of damages under § 362(h) as compared to the permissive nature of such an award under civil contempt).

or property of the estate after a bankruptcy case is filed. *See* 11 U.S.C. § 362(a). In this case, the only affirmative act taken after the debtors' bankruptcy filing was S.I.V.I.'s application for a tax deed following expiration of the redemption period. Since this act would have violated the stay only if it affected property of the debtors' estate, it is necessary to consider what interest, if any, the debtors or their estate retained in the subject property at the time S.I.V.I. applied for the tax deed.

■ In Illinois, taxes on real property become a lien against the property in the year in which they are assessed, *see* 35 ILCS 200/21–75 (1994), and if the taxes are not paid, the county collector may sell the property at a tax sale. *See* 35 ILCS 200/21–190. When the property is sold, the tax lien is extinguished and the purchaser receives a certificate of purchase. *See* 35 ILCS 200/21–250. The certificate of purchase does not affect the delinquent property owner's legal or equitable title to the property, which remains in the owner, *see Matter of Application of Cook County Treasurer*, 185 Ill. App.3d 701, 703, 134 Ill.Dec. 15, 16, 542 N.E.2d 15, 16 (1989); *Tabor Enterprises, Inc. v. People of the State of Illinois*, 65 B.R. 42, 45 (N.D.Ohio 1986), but gives the tax purchaser the right to receive payment if the property is redeemed within the statutory redemption period. *See* 35 ILCS 200/21–390. If the property is not redeemed, the tax purchaser, after expiration of the redemption period, may obtain a tax deed to the property. *See* 35 ILCS 200/22–40.

In order to be entitled to such deed, the tax purchaser must serve notice of the pending expiration of the redemption period on owners, occupants, and parties interested in the property and must file a petition in the circuit court seeking issuance of a tax deed if the property is not redeemed. *See* 35 ILCS 200/22–10; 35 ILCS 200/22–30. This notice and petition, which includes the date on which the tax purchaser intends to apply for a tax deed if the property is not redeemed, must be served not more than five months but not less than three months prior to expiration of the redemption period. *See* 35 ILCS 200/22–15; 35 ILCS 200/22–30. Once the redemption period expires without the property being redeemed, the tax purchaser must apply for an order on the petition, and the court, after determining that the statutory requirements have been met, will enter an order directing the county clerk to issue a tax deed to the purchaser. *See* 35 ILCS 200/22–40.[10]

■ Under this statutory scheme, the delinquent property owner, prior to expiration of the redemption period, retains legal and equitable ownership of the property and has the right to redeem the property by paying the amount of the tax purchaser's lien. *See In re McKeever*, 132 B.R. 996, 1010 (Bankr.N.D.Ill.1991). Upon expiration of the redemption period,[11] however, the owner loses all interest in the property, including the right to redeem, and can do nothing to prevent issuance of a deed to the tax purchaser. *See In re Jackson*, 176 B.R. 156, 159 (N.D.Ill. 1994); *Tabor Enterprises*, 65 B.R. at 46; *In re McKeever*, 132 B.R. at 1010; *In re Butler*, 171 B.R. 321, 326 (Bankr.N.D.Ill.1994); *In re Rich*, 1994 WL 527161, at *3 (Bankr.N.D.Ill. 1994). At that time, the tax purchaser acquires equitable title to the property and has the right to obtain legal title by proving compliance with the statutory requirements. *McKeever*.

■ If bankruptcy intervenes during the running of the redemption period, the automatic stay prevents any action by the tax purchaser to divest the delinquent property owner of an interest in the property. *See* 11

---

**10.** Section 22–40 provides in pertinent part:
 If the redemption period expires and the property has not been redeemed and all taxes ... have been paid ... and the notices required by law have been given ... and the petitioner has complied with all the provisions of law entitling him or her to a deed, the court shall so find and shall enter an order directing the county clerk ... to issue ... a tax deed. 35 ILCS 200/22–40.

**11.** The automatic stay does not toll the running of the redemption period since expiration of the redemption period, although affecting the debtor's interest in property sold for taxes, is not the type of affirmative act proscribed by § 362(a). *See In re Tabor Enterprises, Inc.*, 65 B.R. 42, 46 (N.D.Ohio 1986); *In re Wells Properties, Inc.*, 102 B.R. 685, 690–91 (Bankr.N.D.Ill.1989).

U.S.C. § 362(a)(3). Expiration of the redemption period, however, leaves the debtor—and the debtor's estate—with bare legal title to the property. Since legal title remains in the debtor until issuance of the tax deed and since the tax deed does not issue automatically but requires affirmative action by the tax purchaser, some courts have indicated that relief from stay is necessary before the tax purchaser can proceed to obtain such a deed. *See In re Wells Properties, Inc.*, 102 B.R. 685, 691 n. 3 (Bankr.N.D.Ill. 1989). Other courts have reasoned that relief from stay is not necessary since the debtor can do nothing to prevent issuance of the tax deed and the tax purchaser's act of obtaining merchantable title is not the sort of act that is prohibited by the automatic stay. *See In re Jackson*, 176 B.R. at 159; *In re McKeever*, 132 B.R. at 1011; *see also Tabor Enterprises*, 65 B.R. at 47 n. 9 (filing of petition for tax deed does not violate stay because tax deed may issue only if property owner fails to redeem). Even those courts requiring relief from stay, however, recognize that such relief is easily obtained because the tax purchaser, after expiration of the redemption period, has an apparent right to immediate possession of the property, which the debtor would be unable to adequately protect. *See* 11 U.S.C. § 362(d)(1); *Wells Properties.*[12]

 Applying this reasoning to the present case, the Court finds that while S.I.V.I. should have sought relief from stay before applying for a tax deed because the estate retained legal title to the subject property, its failure to do so was not sufficiently egregious to warrant the imposition of damages under the Court's civil contempt power. *See In re Goodman*, 991 F.2d at 620 (bankruptcy court exercised its discretion to find that violation of stay did not justify an award of damages under civil contempt). The debtors, after expiration of the redemption period, could no longer prevent issuance of a tax deed or forestall S.I.V.I.'s action against the property. *See Rich*, 1994 WL 527161 at *4 ("once the period of redemption has expired, there is nothing the debtor can affirmatively do to prevent the holder of a certificate of purchase from obtaining a deed to the property. At that point, the potential transfer becomes a certainty"). Rather, S.I.V.I. was entitled to obtain legal title and possession of the property once it satisfied the circuit court that the statutory requirements had been met. *See* 35 ILCS 200/22–40. If S.I.V.I. had been unable to make this showing, no tax deed would have issued and legal title to the property would have remained, as before, in the debtors' estate. *See* 35 ILCS 200/22–50.[13] Since neither the debtors nor their estate were harmed by S.I.V.I.'s action, the Court finds no basis for imposing damages against S.I.V.I. for proceeding to obtain a tax deed without seeking relief from stay in this Court.[14]

---

12. In an earlier case before this Court involving substantially identical facts, S.I.V.I., the defendant in this case, filed a motion for relief from stay before proceeding to obtain a tax deed after expiration of the redemption period. This Court, citing *Wells Properties*, ruled that the tax purchaser had cause for relief from stay because the period of redemption had expired without an effective redemption and the debtor could no longer adequately protect the tax purchaser's interest in the property. *In re Baldwin*, BK 91–50764, slip op. at 9–10, 1992 WL 355495 (Bankr. S.D.Ill. Nov. 21, 1991).

13. Under the statute governing Illinois tax sales, unless the tax purchaser obtains and records a deed within one year of expiration of the redemption period, the certificate or deed, and the sale on which it is based, will be rendered void. *See* 35 ILCS 200/22–85. The Bank asserts that, by reason of this provision, the debtors in this case retained an interest in the real estate following expiration of the redemption period that was protected by the automatic stay. However, the possibility that the debtors might have regained ownership of the property at some time in the future was merely a contingent right, which did not rise to the level of a protected property interest under § 541 and § 362(a). *See In re Butler*, 171 B.R. at 325 (despite possible scenarios in which tax purchaser might have failed to receive tax deed, expiration of redemption period still extinguished all of the debtor's equitable interest in property sold at tax sale).

14. By this ruling, the Court does not intend that tax purchasers in future cases be given carte blanche to continue tax deed proceedings in violation of the stay. Rather, as indicated, such purchasers should take the precaution of obtaining relief from stay before taking any action regarding property of the estate, and situations arising in the future will be examined on a case by case basis to determine whether damages are warranted under the circumstances.

The Bank, as lienholder on the debtors' mobile home, asserts that it was harmed by S.I.V.I.'s failure to seek relief from stay because such a request would have informed the Bank of the need to redeem the property and preserve its lien. The Court notes, however, that the period of redemption had passed at the time S.I.V.I. applied for a tax deed in January 1994, and the Bank, at that point, had no more right to redeem the debtors' property from the tax sale than had the debtors. Under the Illinois statute, S.I.V.I. could not apply for a tax deed until after expiration of the redemption period, and any request by S.I.V.I. for relief from stay at that time would not have benefited the Bank, whose right to redeem under the statute was foreclosed by expiration of the redemption period.

The Bank, in this case, could have acted to protect its interest in the mobile home by recording its lien as a fixture filing in the real estate records concerning the property to which the mobile home became affixed. *See* 810 ILCS 5/9–313; 810 ILCS 5/9–401(b); *In re Beabout*, 110 B.R. 883, 887 (Bankr.S.D.Ill.1990). If such a fixture filing had been made, the Bank would have been entitled to notice of the pending expiration of the redemption period under the Illinois statute requiring that notice be served on parties interested in the real estate. *See* 35 ILCS 200/22–15.[15] Having failed to take measures to protect its interest in the event of a tax sale of the property in question, the Bank can hardly claim that its loss resulted from S.I.V.I.'s action in obtaining a tax deed after expiration of the redemption period.

For the reasons stated, the Court finds that judgment should be entered against the Bank and in favor of S.I.V.I. on Count I of the plaintiffs' complaint. Accordingly, the Court will grant S.I.V.I.'s motion for summary judgment against the Bank as to Count I. As stated previously, the Court will grant S.I.V.I.'s motion to dismiss Count I of the complaint for lack of standing as to the trustee and will grant S.I.V.I.'s motion to dismiss Count II of the complaint for lack of standing as to both the trustee and the Bank.

---

15. The tax purchaser is required to make a "diligent inquiry" to find and serve all "owners and parties interested in the property." 35 ILCS 200/22–15. While this includes a search of the real estate and tax records, the tax purchaser is not required to search outside the chain of title in order to ascertain interested parties. *See Payne v. Williams*, 91 Ill.App.3d 336, 46 Ill.Dec. 783, 787, 414 N.E.2d 836, 840 (1980); *Landis v. Miles Homes Incorporated of Illinois*, 1 Ill.App.3d 331, 273 N.E.2d 153, 155 (1971).

In this case, S.I.V.I. partner John Vassen stated that in searching the real estate records prior to expiration of the redemption period, he found no record of the Bank's lien and that "neither S.I.V.I. nor any agent ... had any knowledge that [the Bank] had any interest in the real estate." *See* Affidavit of John Vassen, filed May 19, 1995. The Bank does not contend that S.I.V.I. failed to make a diligent inquiry to ascertain its interest in the real estate. If the Bank were to challenge the validity of the deed based on insufficient notice, however, its remedy would be to proceed in state court to set aside the deed, *see* 35 ILCS 200/22–45, rather than to collaterally attack the deed in this Court.