**In re Michael TOBIN and Nancy Tobin, Debtors.**

**Bankruptcy No. 95–10085.**

United States Bankruptcy Court,
D. Rhode Island.

Oct. 16, 1996.

William J. Delaney, Chapter 7 Trustee, Providence, RI.

Gregory W. Hamilton, Providence, RI, for Debtors.

Patricia A. Terry, Providence, RI, for Chase Manhattan Mortgage Corp.

*ORDER GRANTING IN PART, AND DE-NYING IN PART, THE TRUSTEE'S AP-PLICATION TO DISBURSE FUNDS*

ARTHUR N. VOTOLATO, Bankruptcy Judge.

Before the Court is the Trustee's Motion to Disburse Funds to Chase Manhattan Mortgage Corporation ("the Bank"), an *under* secured creditor. On January 30, 1996, the *Debtors* filed a notice of intention to sell real estate located at 33 Lamson Road, Barrington, Rhode Island, which notice stated: "The Debtors intend to sell the Real Estate ... for the sum of $200,000. The Real Estate is subject to a first mortgage ... in an amount exceeding $200,000. In addition, the Real Estate is subject to a second mortgage ... in an amount exceeding $51,000." On February 26, 1996, no objection having been filed, the notice of sale was approved by an "endorsement order," in accordance with R.I. Local Bankr.R. 10. The fact that the notice of sale was filed by the Debtors and not the Trustee is of no consequence, given the information contained in the notice.[1] The Trustee was clearly on notice that the Debtors were selling an asset at a price that could benefit only secured creditors. Based upon the figures in the Debtors' notice of sale, the Trustee's options were narrow; i.e., to: (1) object

1. In hindsight, though, the Debtors had even less business selling the property than did the Trustee.

to the notice of sale; or (2) abandon the property, pursuant to 11 U.S.C. § 554. He did neither.

■ On March 1, 1996, the property was sold for $193,143. Chase has a first mortgage on the real estate, with a balance due of $196,831. The Trustee informs us that subsequent to the sale, he negotiated with the Bank "a carve out of $1,000 to cover administrative expenses and a distribution to the unsecured creditors." Under the Trustee's proposal creditors will receive, *at best,* a dividend of one percent which, from an administrative standpoint, is open to serious question.[2] The approval of such token "carve outs" for the sole purpose of creating a Trustee's commission (for administering secured assets that should have been abandoned pursuant to 11 U.S.C. § 554), is a *practice neither contemplated by nor provided for in the Bankruptcy Code.*

■ To the contrary, § 704 of the Code, "Duties of Trustee," requires the trustee to:

(1) collect and reduce to money the property of the estate for which trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest.

11 U.S.C. § 704(1). The mission of the Chapter 7 trustee is also to "enhance the debtor's estate *for the benefit of unsecured creditors," In re Bequette,* 184 B.R. 327, 333 (Bankr.S.D.Ill.1995) (emphasis added), and the administration of assets by Chapter 7 trustees, where the property is clearly overencumbered by valid liens, in no way comports with their obligation to enhance the estate for the benefit of unsecured creditors and to expeditiously close the estate.

The practice also runs afoul of the United States Trustee's own prohibition against selling collateral for secured creditors, where there is no accompanying benefit to the estate.

A trustee should only sell assets that will generate income for the estate. In evaluating whether an asset has equity, the trustee must determine whether there are valid liens against the asset, and whether the value of the asset exceeds the liens. The trustee must also consider whether the cost of administration or tax consequences of any sale would significantly erode or exhaust the estate's equity interest in the asset. If the sale of an asset would result in little or no income to the estate for the benefit of creditors, the trustee should abandon it.

*See* Handbook for Chapter 7 Trustees, published by the Executive Office of the United States Trustee, at 56.

■ In addition, statistics prepared by the Executive Office of the United States Trustee regarding distribution in Chapter 7 cases show that in Region I,[3] Rhode Island's Chapter 7 trustees disburse, percentagewise, more money to secured creditors (50.5%), and less money to unsecured creditors (12.3%), than any other district in the Region. These statistics cover the period August 1, 1992, to June 30, 1996.[4] For the same period, the national average for distribution to secured creditors is 31.8% and 21.3% to unsecured creditors. These comparisons suggest that we are out of step and that too many Rhode Island Chapter 7 cases are being administered primarily for the benefit of secured creditors and panel trustees. We are aware of no valid reason why the practice should be encouraged or allowed to continue. In light of the District's (and ultimately this Court's) demonstrated poor performance on behalf of unsecured creditors, trustees are (again)[5] admonished to abandon, forthwith, property that does not benefit

---

**2.** The cost of postage and other expenses required to send checks to creditors would probably exceed any dividend paid.

**3.** United States Trustee Region I is comprised of Maine, New Hampshire, Massachusetts, and Rhode Island.

**4.** In fairness to the panel trustees, the July 1, 1995 to June 30, 1996 statistics do show *some* change but, compared with our neighbors, Rhode Island is still last in this department—or first, depending on your vantage point.

**5.** On July 19, 1995, the Court met with the U.S. Trustee and with the panel trustees and discussed the very problem presented in the instant case. It was our belief that everyone understood the Court's concern, and that the practice would not continue. We were wrong, and it has.

the estate. As has been pointed out previously, bankruptcy courts are authorized to approve carve outs *only* if they produce a meaningful dividend to unsecured creditors.[6] *See Bequette*, 184 B.R. at 333. Henceforth, trustees who administer assets primarily for the benefit of themselves and secured creditors, with little or no return for unsecured creditors, run the risk of being denied all compensation.

Because the practice under scrutiny has been (at least tacitly, if not unwittingly) approved by this Court for a long time, the present request to disburse funds to Chase Manhattan Mortgage Corporation is GRANTED, but, because the proposed carve out would produce less than a 1% dividend to unsecured creditors, and for the reasons mentioned earlier, that part of the motion is DENIED. Since there was no equity in the subject property, *all* of the proceeds from this sale should be turned over to the Bank, and it is so Ordered. Finally, we will treat this matter as though the Chapter 7 Trustee has already filed a request for commission, and DENY the same. *See In re Roco Corp.*, 64 B.R. 499 (D.R.I.1986).