In re OHIO INDUSTRIES,
INC., Debtor.

No. 01–63166.

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

May 14, 2003.

Bruce R. Schrader, II, Akron, OH, for Lisa Afarin, trustee.

## MEMORANDUM OPINION

RUSS KENDIG, Bankruptcy Judge.

This matter was heard February 24, 2003 on the application of Lisa Afarin, Chapter 11 Trustee (hereafter "Trustee"), for a final allowance of compensation for services rendered and reimbursement of expenses incurred in the within case. Present were Trustee and Bruce R. Schrader, II, counsel for Trustee (hereafter "Counsel"). No objections were filed.

### Jurisdiction

The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(a) and 157(a) and the general order of reference entered in this district on July 16, 1984. The following constitute the court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

### Facts

On May 29, 2001, a civil action was initiated in the Court of Common Pleas of

Crawford County, Ohio against Ohio Industries, Inc. (hereafter "Debtor") by Comerica Bank (hereafter "Comerica"), Debtor's primary secured creditor, which resulted in the appointment of a receiver for substantially all of Debtor's assets. On July 27, 2001, twenty of Debtor's creditors (hereafter "Petitioning Creditors") filed an involuntary Chapter 7 petition against Debtor. (Docket number 1.)

On August 6, 2001, Comerica filed a motion to permit the state court receiver (hereafter "Receiver") to continue to administer certain assets and to excuse compliance with 11 U.S.C. § 543. (Docket numbers 3 and 4.) These motions were granted on August 17, 2001, along with an order extending the time for Debtor to answer. (Docket numbers 8 and 9.)

On September 21, 2001, Receiver filed a motion to sell the most viable product lines (the Ohio Locomotive Crane and American Locomotive Crane businesses) to ERS Industries, Inc. (hereafter "ERS") and to auction most of the balance of Debtor's assets. (Docket number 23.) The auction was not an "advertise and hope for the best" situation. Rather, it was to be an auction among the four highest bidders for these particular assets and was subject to specifically listed minimum bids.

Other creditors continued filing motions for relief from stay to repossess assets (see, e.g., docket numbers 27 and 28), and Debtor's business and assets continued to narrow to a foreseeable conclusion. For example, Comerica was granted relief from stay with regard to lockbox funds, accounts receivable, and proceeds from the sale of collateral securing its loan. (Docket numbers 14 and 32.) Comerica and Petitioning Creditors objected to various motions relating to assets that were needed for various sales and effectively managed this piece of the asset maximization puzzle. (See, e.g., docket numbers 36 and 37.)

Finally, on October 9, 2001, the triumvirate of Comerica, Receiver, and Petitioning Creditors reached a deal culminating in the filing of a joint motion to order relief and convert the case to Chapter 11, which was granted the same day. (Docket numbers 46 and 47.) Receiver continued to exercise authority and received further court approval to do so, even after the order for relief was entered. (See the October 15, 2001 order extending Receiver's authority to administer Debtor's estate, docket number 52.) On October 17, 2001, Comerica and Petitioning Creditors jointly moved for appointment of a trustee, which was granted by an order the next day. (Docket numbers 54 and 55.)

Trustee was appointed October 30, 2001 and on the next day, through counsel who had formerly represented Receiver, filed a motion to assume and assign the executory contracts relating to the sale to ERS.[1] Trustee thereafter retained separate counsel (docket numbers 71 and 115), but Receiver's counsel continued to serve as special counsel due to its extensive work on the previously arranged sales (docket numbers 76 and 105).

Sales began closing in short order, as reflected in Trustee's accounting. Additional "mop-up" sales followed. For example, Corporate Assets, Inc. bought in bulk much of the property not needed by buyers of the specific product lines and thereafter resold this property in an onsite auction. Trustee had Corporate Assets, Inc. sell many of the remaining assets, the

---

1. This was granted November 16, 2001, in the form of two orders. (Docket numbers 87 and 88.)

flotsam and jetsam of the estate, at the onsite auction. (Docket number 166.)

Many of these sales were the culmination of transactions set in motion by Receiver. On April 22, 2002, an order was entered in which Comerica received its final payment, having received a total of $3,205,000.00. (Docket number 171.) This was arguably a reduction of $147,286.53 because Comerica compromised in order to conclude its involvement in the case. This concession was Trustee's accomplishment and created most of the estate that exists for payment of administrative and unsecured claims.

Total receipts of $4,072,791.50 were collected and total disbursements of $3,836,507.61 were made for the period of October 30, 2001 through February 10, 2003. Trustee is holding estate funds of $229,571.69 out of which she requests compensation of $138,345.23 and reimbursement of expenses of $865.55 for work she performed from October 30, 2001 through February 10, 2003. The balances requested by professionals total $41,611.36. Final applications of professionals have not yet been filed, although Counsel expects them to be small by comparison to earlier applications. At the hearing, Trustee indicated she was hopeful that $40,000.00 would remain for creditors along with a potential lawsuit but that $33,000.00 would be the current net if all expected professional fees and expenses were paid.

Trustee attached exhibits detailing her computation of the requested compensation, which is percentage based. No time records were attached.

A motion to convert the case to Chapter 7, filed contemporaneously with Trustee's application, was granted. (Docket numbers 211 and 222.) Robert H. Cyperski was appointed Chapter 7 trustee as Trustee returned to employment with the United States Bankruptcy Court for the Northern District of Ohio.

## Law

### I. Reasonable compensation and the sliding scale

The court reviews Trustee's request for compensation pursuant to 11 U.S.C. §§ 330 and 326(a). Under § 330(a)(1)(A) and (B), a trustee may be awarded "reasonable compensation for actual, necessary services rendered" and "reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1)(A) and (B). Section 326, in turn, places further limitations on compensation to be awarded to a trustee. Section 326(a) reads in pertinent part:

> In a case under chapter 7 or 11, *the court may allow reasonable compensation* under section 330 of this title of the trustee for the trustee's services, payable after the trustee renders such services, *not to exceed* 25 percent on the first $5,000 or less, 10 percent on any amount in excess of $5,000 but not in excess of $50,000, 5 percent on any amount in excess of $50,000 but not in excess of $1,000,000, and reasonable compensation not to exceed 3 percent of such moneys in excess of $1,000,000, upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims.

11 U.S.C. § 326(a) (emphasis added).

■ Trustee's compensation is limited both by its reasonableness under § 330 and the percentage maxima of § 326(a). Although Trustee's requested compensation is the upper limit imposed by § 326(a), "[t]he trustee's compensation is not a commission based on distributions and the maximum fee permitted is not the presumptive fee for the trustee." *In re Computer Learning Ctrs., Inc.*, 285 B.R. 191, 229–30 (Bankr.E.D.Va.2002) (citing *In re*

*Lan Assoc. XI, L.P.*, 192 F.3d 109, 115–16 (3rd Cir.1999) (pre–1994 statute analyzed but results the same); *In re Neill,* 242 B.R. 685, 689 (Bankr.D.N.D.1999); *In re Biskup,* 236 B.R. 332, 336 (Bankr.W.D.Pa. 1999); *In re Moore,* 235 B.R. 414, 416 (Bankr.W.D.Ky.1999)). The percentage is not a starting point or an expectation. Instead, § 326(a) sets forth "the maximum compensation payable to a trustee." *Connolly v. Harris Trust Co. of California (In re Miniscribe Corp.),* 309 F.3d 1234, 1241 (10th Cir.2002). It does not set forth "a presumptive or minimum" standard. *Id.* "[T]he cap of § 326(a) is implicated only when the compensation is reasonable, and reasonableness is a determination that must begin with 11 U.S.C. § 330." *In re Butts,* 281 B.R. 176, 178 (Bankr.W.D.N.Y. 2002). Therefore, the court must first apply the reasonableness standards under § 330(a) to Trustee's request before applying the percentage-based cap scheme under § 326(a). *See Miniscribe,* 309 F.3d at 1241.

Section 330(a)(3) [2] delineates what courts are to consider when determining whether compensation is reasonable:

> In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services are necessary to the administration of, or beneficial at the time at which the service

was rendered toward the completion of, a case under this title;

> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and
>
> (E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

▬ The burden of proof as to entitlement to and reasonableness of a fee request is upon the trustee. *In re Mansfield Tire & Rubber Co.,* 65 B.R. 446, 455 (Bankr.N.D.Ohio 1986). Even where no objections have been raised to an application for compensation, the court is still charged with conducting an independent examination of that application. *Id.;* 11 U.S.C. § 330(a)(2).

## II. Lodestar standard

Keeping the parameters of 11 U.S.C. §§ 330 and 326(a) in mind, courts historically have tracked the lodestar standard in determining the reasonableness of compensation. *See Gisbrecht v. Barnhart,* 535 U.S. 789, 122 S.Ct. 1817, 1824–25, 152 L.Ed.2d 996 (2002); *Mansfield Tire & Rubber Co.,* 65 B.R. at 451–52. The lodestar standard is calculated by multiplying a reasonable number of hours spent on a case times a reasonable hourly rate. The lodestar standard has been applied in the bankruptcy context. *E.g., In re Boddy,* 950 F.2d 334 (6th Cir.1991).

---

**2.** "Section 224 of the Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, rewrote section 330(a). In doing so, the 1994 Act added two subparagraphs numbered 330(a)(3)(A). It appears that the first reference to paragraph 330(a)(3)(A) is extraneous," Alan N. Resnick, et al., *2003 Collier Pamphlet Edition, Bankruptcy Code,* § 330, fn. 1 (Matthew Bender & Co.2002), and therefore, the reference to (A) will be disregarded.

Because the [Bankruptcy] Code provides for attorney's fees, and because the plain language of the Code indicates Congress intended no distinction between attorney's fees in bankruptcy cases and those awarded in non-bankruptcy [sic] cases, the courts have generally relied upon the lodestar approach when determining attorney's fees in bankruptcy cases. We join these courts in adopting the lodestar method of fee calculation for bankruptcy cases.

*Id.* at 337 (citations omitted).

■ The lodestar standard is an objective starting point, but the inquiry does not end there. *Hensley v. Eckerhart,* 461 U.S. 424, 433, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Qualitative factors may be placed into the equation. *Id.* at 434, 103 S.Ct. 1933; *see also MiniScribe,* 309 F.3d at 1243 (lodestar test, with appropriate enhancements, is the appropriate method of calculating reasonable compensation for a trustee); *Garb v. Marshall (In re Narragansett Clothing Co.),* 210 B.R. 493, 497 (1st Cir. BAP 1997) (application of lodestar standard to application for trustee's fees); *In re Draina,* 191 B.R. 646, 649 (Bankr. D.Md.1995) (lodestar standard applied to

determine reasonableness of trustee's fee request).

The qualitative factors include:

1. the requisite time and labor;

2. the novelty and difficulty of the issues;

3. the requisite skill;

4. the preclusion of other employment;

5. the customary fee;

6. the risk incurred;

7. time limitations;

8. the amount involved and the results obtained;

9. the experience, reputation, and ability of the trustee;

10. the desirability of the case;

11. the nature and length of the case; and

12. the results obtained in similar cases.

*Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974).[3] As the court stated in *In re Penn–Dixie Indus., Inc.,* 18 B.R. 834 (Bankr.S.D.N.Y. 1982):

---

3. The Sixth Circuit Court of Appeals has shown some disfavor for these qualitative factors in the past. *See Northcross v. Bd. of Educ. of Memphis City Sch.,* 611 F.2d 624, 642–43 (6th Cir.1979). However, more recently, in *Boddy,* the court stated:

The bankruptcy court also may exercise its discretion to consider other factors such as the novelty and difficulty of the issues, the special skills of counsel, the results obtained, and whether the fee awarded is commensurate with fees for similar professional services in non-bankruptcy [sic] cases in the local area. In many cases, these factors will be duplicative if the court first determines the lodestar amount because the lodestar presumably subsumes all of these factors in its analysis of the *reasonable* hourly rate and the *reasonable* hours worked.

*Boddy,* 950 F.2d at 338 (citation omitted) (emphasis in original); *see also Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 564–66, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986). This seems to be the more well-reasoned opinion as § 330(a)(3) provides that a court should consider all relevant factors in determining the reasonableness of compensation, including the *benefit to the estate,* the *complexity, importance, and nature of the issues in the case,* and *comparable compensation in nonbankruptcy cases.* Thus, the Code provides explicit support for the factoring in of qualitative components in the language "all relevant factors" and "the nature, the extent, and the value of . . . services." 11 U.S.C. § 330(a)(3). The distinctions between the components of the two approaches are so small that they are indistinguishable when beaten into the fee omelette.

The criteria for fee awards variously stated contain three main elements: (1) the quantity factor: documented time spent and customary billing rates; (2) the quality factor: the quality of advocacy required and delivered, taking into account the novelty and difficulty of the issues presented, skills called for, time constraints, and counsel's personal qualifications; (3) the result factor: the bottom line amount recovered for the estate and its creditors (as well as the degree of speed from loss to recovery). Consideration of these broadly stated fee formulation factors permits the court to focus on a firm's baseline time charges, and for cause, modestly enhance or sharply curtail them.... Analysis of the case law confirms that rigidity in the application of fee guidelines has never been the rule. Thus, courts have generally been free to ponder all the variables of a particular case and avoid ill-suited emphasis on a particular guideline.

*In re Penn–Dixie Indus., Inc.,* 18 B.R. at 838–9 (citation omitted).

 While qualitative factors may be considered by a court in calculating a lodestar standard, the size of a case does not matter. The mere size of a case provides no justification for a maximum fee. *Computer Learning Ctrs., Inc.,* 285 B.R. at 230. Where the "claimed rate and number of hours are reasonable, the resulting product is presumed to be the reasonable fee." *Blum v. Stenson,* 465 U.S. 886, 897, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). A professional requesting compensation should submit evidence detailing the hours worked and the rates charged. *Hensley,* 461 U.S. at 433, 103 S.Ct. 1933. If there is inadequate documentation, it is within the court's discretion to reduce the compensation awarded. *Id.*

## Analysis

 Factually, this case is more similar to a case under Chapter 7 than one under Chapter 11. Debtor was forced into a receivership and then an involuntary bankruptcy by its creditors. The United States Trustee appointed a Chapter 7 panel trustee to preside over Debtor's Chapter 11 proceeding. Debtor's primary secured creditor and its Receiver pre-arranged the sale of the most valuable of its assets and located buyers for most of the rest. The compensation statutes are the same for Chapters 7 and 11, but it is important to note that Trustee was never rehabilitating or reorganizing Debtor. Comerica and others sought a limited ongoing operation in order to maximize liquidation value, and Trustee assumed control shortly before sales began to be completed.

 Oftentimes, in smaller Chapter 7 cases, the trustee is paid the maximum fee permitted under 11 U.S.C. § 326(a). *Computer Learning Ctrs., Inc.,* 285 B.R. at 230. This recognizes that in smaller cases trustees provide services that are worth at least as much as the § 326(a) cap. *Id.* The same results do not follow in larger cases. *Id.* In larger cases, a "trustee must support his fee request in the same manner as any other professional." *Id.*

 In the present case, Trustee did not submit records detailing the hours spent administering this case. Time records are an essential component of the lodestar standard. "The mere size of [a] case standing alone is no justification for an upward adjustment." *Id.* An examination of whether the case involves unique or complex issues is appropriate, *id.,* as well as the results obtained by the trustee. *MiniScribe,* 309 F.3d at 1243.

The size of Trustee's request for compensation is without a doubt large. The

size of the request is commensurate with the corresponding need for time records. When fees are substantial, courts have required detailed time records. *In re Drew*, 272 B.R. 8, 12 (Bankr.D.Wyo.2001) (citing *In re Columbia Plastics, Inc.*, 251 B.R. 580, 585 (Bankr.W.D.Wash.2000)). "At least one court has ruled that detailed time records are required in cases where the value of the estate exceeds $50,000.00." *Drew*, 272 B.R. at 12 (citing *In re Moon*, 258 B.R. 828, 836 (Bankr.N.D.Fla.2001)). Trustee provided no time records to start the analysis under the lodestar standard. This is *not* to suggest that trustees should be burdened with producing time records in typical Chapter 7 cases. That would be unduly burdensome and unnecessarily add to the daunting business and personal challenge inherent in being a Chapter 7 trustee. This case is both extraordinary and arises in Chapter 11.

In the present case, Trustee's fee request far exceeds the total asset fees awarded to any of the four other Chapter 7 panel trustees for *all* of the asset cases each closed in the entire calendar year 2002.[4] Each trustee closed between 20 and 40 asset cases in 2002, some of which had required administration for as far back as 1992. Trustee's fee request of $138,345.23 dwarfs the total year 2002 average asset fee of $57,997.75 paid to those other Chapter 7 panel trustees.

In fact, given case closings, this single fee must exceed the total for asset and no-asset fees paid to any local trustee for all work performed for the entire 2002 calendar year, the largest volume year in the court's history. Again, this is a Chapter 11 matter, but the comparison points to the volume of time that must be required. This doesn't mean that Trustee's fee is not possible, but as noted in *Drew*, the necessity of records becomes all the more evident and the basis for the fee must be articulated.

■■■■ While § 326(a) provides for the calculation of reasonable compensation based on all money disbursed in a case, including money disbursed to a holder of a secured claim, it is inequitable to charge the unsecured creditors with paying Trustee's fees where a dividend to them is still forthcoming and will be minimal, and Comerica, Debtor's primary secured creditor, has received the majority of the money already disbursed by Trustee. *See In re Stoecker*, 125 B.R. 767, 775 (Bankr.N.D.Ill. 1991) (noting the inequity in asking unsecured creditors, who had not yet received a dividend, to pay $308,000.00 in trustee's fees where most of the $18,000,000.00 recovered by the trustee had been disbursed to secured creditors). A liquidation bankruptcy case is not administered for the benefit of a debtor's secured creditors but for the benefit of its unsecured creditors. *See In re Tobin*, 202 B.R. 339, 340 (Bankr. D.R.I.1996) (quoting *In re Bequette*, 184 B.R. 327, 333 (Bankr.S.D.Ill.1995)).

Additionally, the funds that were not consumed by secured creditors were consumed in administrative expenses, including the fees of professionals and Trustee's proposed fee. These negative considerations should not be viewed as always militating for reduced compensation. Neither

---

4. Specifically, the Clerk of Court's 2002 Professional Fees Report, prepared in compliance with Federal Rule of Bankruptcy Procedure 2013, listed the following compensation paid to Chapter 7 panel trustees appointed in the Canton Court in 2002. These are fees for administering asset cases. The trustees would also receive the $60.00 per case fee, commonly referred to as the "no asset fee."

| Year of case origination | Trustee | Total |
| --- | --- | --- |
| 1998–2002 | Trustee Kandel | $65,417.10 |
| 1992–2002 | Trustee Mason | $74,333.14 |
| 1998–2002 | Trustee Demczyk | $41,995.41 |
| 1996–2002 | Trustee Silagy | $50,245.34 |

should they be ignored in a case in which a fee exceeding $138,000.00 is requested and it is estimated that there will be $33,000.00 to $40,000.00 for unsecured creditors from an estate of over $4,000,000.00.

It is also worth noting that the case contained multiple layers of professional and administrative expense. There was not only Trustee. There was also Receiver, who continued to be paid from receipts generated by Debtor's assets prepetition and postpetition. There was also Receiver's corporate organization, Glass & Associates, which was paid from receipts generated by Debtor's assets. David Egner (hereafter "Manager") was employed to deal with many of the day-to-day issues and was heartily compensated. Manager worked for Receiver prepetition and postpetition and for Trustee and dealt with many of the daily problems and frustrations, as well as sale coordination activity. His salary was continued through December 31, 2001, long after the filing of the case. Manager was paid $7,500.00 per month plus a bonus of $45,000.00.

In response to Receiver's final fee application, Trustee summarized expenses for Receiver, Manager, Glass & Associates, and Receiver's counsel as follows:

*Receiver:*

| | |
|---|---|
| $118,650.00 | fees |
| $ 3,673.40 | expenses |
| $122,323.40 | total |
| $ 31,925.11 | previously paid |

*David Egner (Manager)*

| | |
|---|---|
| $ 7,500.00 | per month compensation |
| $ 45,000.00 | lump sum compensation bonus |

*Glass & Associates*

| | |
|---|---|
| $357,757.50 | compensation |
| $ 56,921.27 | expenses |
| $414,678.77 | total |
| $101,114.80 | previously paid |

*McDonald Hopkins Co., LPA (Receiver's counsel)*

| | |
|---|---|
| $ 98,332.00 | fees |
| $ 6,365.83 | expenses |
| $104,697.83 | total |
| $ 52,694.55 | previously paid |

(Docket number 132, page 2.)

Trustee succeeded in negotiating with Receiver, Glass & Associates, Manager, and McDonald Hopkins Co., LPA to reduce their final fee allowance from $499,965.54 to $400,141.75.[5] (Docket number 172.)

The point is *not* that a great deal of money was paid to professionals and managers. The point is that a great deal was paid to professionals and managers, much of which was for normal trustee functions for the sales and operations that produced the funds upon which Trustee seeks a percentage-based recovery.

It is unreasonable to pay Trustee a pure, percentage-based recovery when others were paid for trustee duties in producing the sales and managing the day-to-day enterprise. Otherwise, trustees would subcontract their duties, pay the subcontractors from estate funds, and request an additional percentage-based fee.

This is *not* to suggest that Trustee orchestrated this process. Much of this was paid prepetition and the structure was foisted upon her, but it was voluntarily retained postpetition. Further, the benefit of much of this work was evident. The largest transaction was nearly completed. Many of the day-to-day activities were handled by others. The creditors have paid for the services that shortened Trustee's work. Further, it is not reasonable to pay multiple fees for one result, unless each of the fees is related to the entirety of the estate that is produced. Trustee's

---

**5.** McDonald Hopkins Co., LPA also received in excess of $50,000.00 as special counsel to Trustee. This was the final fee allowance.

There were prepetition payments in addition to the $400,141.75. (Docket number 192.)

pure percentage request seeks to pay prepetition and postpetition fees to third parties for managing and creating liquidation proceeds in addition to her full percentage fee. This is totem pole administrative expense.

Moreover, it is difficult to square this request with a standard of reasonableness when an estate of over $4,000,000.00 proposes to leave $33,000.00 to $40,000.00 after distributing all the funds to secured creditors, professionals, and other expenses. It becomes impossible to square with a standard of reasonableness in the absence of time records or a belief that the hours times a reasonable rate of compensation equals the request.[6]

The court is faced with determining a reasonable fee with no time records. It would be manifestly unfair to deny Trustee compensation on the grounds of burden of proof.

Trustee distributed more than $4,000,000.00. The statute does permit compensation on secured creditor distributions and the administration provided a fair and supervised method for paying the secured creditor. Trustee did create an unsecured estate, albeit a limited one. Without the negotiated final payment to Comerica and the negotiated fee for Receiver, Manager, Glass & Associates, and Receiver's counsel, there would have been no unsecured estate. Trustee performed many of these services at the risk of non-payment since it was unclear whether the estate was administratively solvent.

The current hourly rate for legal services charged by other panel trustees at this time was in the range of $150.00 to $175.00 per hour, all of whom had more experience at the time. A fee of $50,000.00 provides an adequate and substantial upward adjustment to the likely number of hours that were spent given the time frame of the active operation of the business, the rapidity of sales, the involvement of other professionals, and the services performed.

There is the temptation to be generous, particularly when those involved are regular participants in court proceedings and are familiar faces. Generosity only exists in giving what is one's own to give. This is not the court's money nor is it Trustee's. It is not possible to be generous with someone else's money. It is unfair for the court to order an unreasonable fee at the expense of the legions of faceless creditors who are involuntarily dragged through the legal system by their wallets.

A fee of $50,000.00 is reasonable based upon the language of 11 U.S.C. §§ 326 and 330, the case law, and the evidence.

### Conclusion

An order in accordance with this memorandum opinion shall enter forthwith.

### ORDER

Lisa Afarin, Chapter 11 Trustee, filed an application for a final allowance of compensation for services rendered and reimbursement of expenses incurred in the within case. No objections were filed.

For the reasons set forth in the accompanying memorandum opinion, the court hereby allows Trustee a final fee of $50,000.00 and reimbursement of expenses of $865.55 for the period of October 30, 2001 through February 10, 2003 and orders the same to be paid.

It is so ordered.

---

6. $138,345.23 calculates to over 920 hours at $150.00 per hour.