A.P. PROPERTIES, INC., Plaintiff-Appellant, v. ROBERT H. GOSHINSKY *et al.*, Defendants-Appellees.—*In re* APPLICATION OF THE COUNTY TREASURER AND *ex officio* COUNTY COLLECTOR OF LAKE COUNTY, ILLINOIS, for Judgment and Order of Sale Against Real Estate Returned Delinquent for Nonpayment of General Taxes and Special Assessment for the Year 1992 and Prior Years (A.P. Properties, Inc., Petitioner-Appellant, v. Illinois Real Estate Opportunity Fund I, L.L.C., Respondent-Appellee).

Second District No. 2—97—0923

Opinion filed August 7, 1998.

476

Thaddeus M. Bond, Jr., of Law Offices of Thaddeus M. Bond, Jr., & Associates, of Waukegan, for appellant.

Jeffrey M. Weston, of Law Office of Jeffrey M. Weston, of Chicago, for appellees.

JUSTICE COLWELL delivered the opinion of the court:

A.P. Properties, Inc. (AP), filed a petition for a tax deed, and respondent, Illinois Real Estate Opportunity Fund I, L.L.C. (the Fund), filed a section 2—619(a)(9) motion to dismiss (735 ILCS 5/2—619(a)(9) (West 1996)). AP also filed a chancery complaint, and defendants Robert H. Goshinsky, Leeanna K. Goshinsky, Corey Goldstein, and the Fund filed a section 2—615 motion to dismiss (735 ILCS 5/2—615 (West 1996)). The circuit court of Lake County consolidated the matters and granted both motions, thereby dismissing with prejudice AP's causes of action. AP timely appealed therefrom. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1971, Kurt A. Goshinsky (Kurt) and his wife Ruth C. Goshinsky (Ruth) purchased the property commonly known as 40159 North Donald Drive in Antioch (the property). Ruth died in 1990, and Kurt died in 1993. On December 6, 1993, AP purchased the delinquent taxes on the property at the Lake County tax sale. AP set the redemption period to expire on November 29, 1996. On June 7, 1996, Leeanna K. Goshinsky (Leeanna), Kurt and Ruth's daughter, conveyed her interest in the property to her brother Robert H. Goshinsky (Robert). On November 19, 1996, Robert conveyed his interest in the property to the Fund.

Prior to Robert's conveyance to the Fund, AP filed a petition for a tax deed on July 26, 1996. AP alleged therein that it had purchased the delinquent taxes on the property at the Lake County tax sale on December 6, 1993, that the Lake County clerk issued it a certificate of sale, and that it had extended and set the redemption period to expire on November 29, 1996. AP then prayed for the issuance of a tax deed in the event that the property was not redeemed.

On April 10, 1997, the Fund filed a section 2—619(a)(9) motion to dismiss in response to AP's petition. The Fund argued that AP failed to properly notify Robert, a claimed record title holder, of the expiration of the redemption period (see 35 ILCS 200/22—10 (West 1996)) and that the Fund had made a valid redemption of the property prior to the expiration of the redemption period. In support, the Fund alleged that on June 7, 1996, Leeanna conveyed her interest in the property to Robert by quitclaim deed. That same day, Robert recorded the quitclaim deed with the Lake County recorder of deeds office. AP's service list attached to its notice of the expiration of the redemption period and AP's subsequent notice by publication, however, did not explicitly include Robert.

The Fund further alleged that, on November 19, 1996, it entered into a contract with Robert to purchase the property "as is" and

subject to all title defects and unpaid taxes for the net sum of $5,000. On the same day, Robert executed a warranty deed conveying the property to the Fund, and the Fund recorded the warranty deed on November 20, 1996. Immediately thereafter, the Fund paid $3,966.34 in redemption of the taxes on the property, and the Lake County clerk issued a redemption receipt that noted redemption on November 20, 1996.

On April 21, 1997, AP filed its response to the Fund's motion. In addition to other less relevant arguments, AP argued that the Fund lacked a valid interest in the property and, therefore, the Fund could not redeem the delinquent taxes. In addition, AP argued that the failure of the Fund to file a written redemption under protest allegedly prevented it from challenging AP's petition for a tax deed.

In addition to AP's petition for a tax deed, on April 10, 1997, AP filed a chancery complaint. Therein, AP alleged the following facts: (1) AP purchased the delinquent taxes on the property at the tax sale; (2) AP held a certificate of sale and filed the petition for a tax deed; (3) Leeanna owned the property; (4) the redemption period was set to expire on November 29, 1996; (5) on June 7, 1996, Leeanna transferred her interest in the property to Robert; (6) on November 19, 1996, Robert transferred his interest in the property to the Fund; (7) Robert remained in possession of the property; (8) the value of the property was in excess of the $5,000 sale price; (9) Leeanna and Robert were unable to pay the delinquent taxes; (10) the Fund redeemed the taxes, but AP refused to accept the redemption; and (11) but for the Fund's redemption, AP would have obtained a tax deed to the property. AP then alleged that the transfer to the Fund was fraudulent and in violation of sections 5(a) and 6(a) of the Uniform Fraudulent Transfer Act (the Act) (740 ILCS 160/5(a), 6(a) (West 1996)). AP sought an order voiding the transfer from Leeanna and Robert to the Fund or, in the alternative, a judgment against the Fund for the fair market value of the property.

On May 22, 1997, the Fund, Goldstein, Robert, and Leeanna filed a section 2—615 motion to dismiss AP's chancery complaint. The movants argued that AP lacked standing under the Act because AP suffered no injury when the Fund redeemed the delinquent taxes.

In response, AP argued that Leeanna and Robert were debtors under the Act because they owned real property encumbered by a tax lien and that AP was a creditor under the Act because it held a tax certificate. Therefore, AP concluded that it had standing under the Act.

In reply, the movants argued that AP lacked standing because AP was not a creditor under the Act. The movants also argued that the

Fund was not a debtor under the Act because AP had no claim against it; AP's claim was for money which was secured by the property.

On May 22, 1997, the trial court consolidated the petition for a tax deed with the chancery complaint. On August 12, 1997, the trial court granted both motions and dismissed both causes with prejudice. AP timely appealed.

## ANALYSIS

### I. SECTION 2—615 MOTION TO DISMISS CHANCERY COMPLAINT

■ In reviewing an order that granted a section 2—615 motion to dismiss, a reviewing court should take as true all well-pleaded facts in the complaint and all reasonable inferences from those well-pleaded facts and should affirm the order if it clearly appears that no set of facts could ever be proved that would entitle the plaintiff to recover. *Indlecoffer v. Village of Wadsworth*, 282 Ill. App. 3d 933, 940 (1996). The reviewing court's review is *de novo*; therefore, it is not required to defer to the trial court's judgment. *Indlecoffer*, 282 Ill. App. 3d at 940.

■ To state a cause of action under either section 5(a) or section 6(a) of the Act, a plaintiff must allege the existence of a debtor/creditor relationship and the existence of a claim. See 740 ILCS 160/5(a), 6(a) (West 1996). The Act defines a creditor as a person who has a claim and a debtor as a person who is liable on a claim. 740 ILCS 160/2(d), (f) (West 1996). A claim is "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 740 ILCS 160/2(c) (West 1996).

In this case, the issue concerning AP's chancery complaint is whether AP is able to allege the existence of a debtor/creditor relationship and a claim. Thus, if AP is unable to allege the existence of a debtor/creditor relationship and of a claim, the trial court properly dismissed its chancery complaint.

AP contends that its claim arose at the time of the tax sale and that Robert and Leeanna were its debtors because they were liable to it for the delinquent taxes on the property. We disagree.

■ To determine whether a debtor/creditor relationship existed in this case and whether AP possessed a claim, we must first review the Property Tax Code (the Code) (35 ILCS 200/1—1 *et seq.* (West 1996)). The Code provides the procedural framework for the levying, valuation, extension, and collection of property taxes by taxing districts. Property taxes are a lien on the property until the taxes are paid or the property is sold under the Code. 35 ILCS 200/21—75 (West 1996).

After taxes become delinquent (see 35 ILCS 200/21—15 through

21—40 (West 1996)), the Code authorizes county collectors to apply for a judgment against and the sale of any delinquent properties. See 35 ILCS 200/21—110, 21—115, 21—145, 21—180, 21—260 (West 1996). To avoid the sale, the owner of the delinquent property may pay the taxes to the county collector at any time before the sale. 35 ILCS 200/21—165 (West 1996). If a judgment is rendered against the property, however, the Code authorizes the county collector to offer the property for sale to the highest bidder. 35 ILCS 200/21—190, 21—205, 21—260 (West 1996). The highest bidder pays the county collector the amount bid and is liable to the county for the amount due. 35 ILCS 200/21—240, 21—260 (West 1996). The amount bid is even recoverable in a civil proceeding. 35 ILCS 200/21—240 (West 1996).

Upon judicial confirmation of the sale, the tax lien is extinguished (35 ILCS 200/21—260 (West 1996)), and the county clerk and the county collector issue the purchaser a certificate of purchase (35 ILCS 200/21—250, 21—260 (West 1996)). The sale, however, does not affect the owner's personal liability for the taxes, nor does it prevent the institution of a proceeding under section 21—440 of the Code to collect any amount that may remain due after the sale. 35 ILCS 200/21—260, 21—440 (West 1996).

After the issuance of the certificate of purchase, the purchaser may then file a petition for a tax deed. 35 ILCS 200/21—260 (West 1996). However, the owner of the delinquent property or a person interested therein has the right to redeem the property from a tax sale. 35 ILCS 200/21—260(f), 21—345 (West 1996). The person desiring to redeem deposits the appropriate amount with the county collector payable to the county collector (35 ILCS 200/21—355 (West 1996)), and the purchaser's receipt of the redemption money releases the purchaser's claim to the property (35 ILCS 200/21—390 (West 1996)). Conversely, if the redemption period expires and the property has not been redeemed, the court orders the county collector to issue the purchaser a tax deed. 35 ILCS 200/22—40 (West 1996).

■ According to the procedures of the Code, AP's debtor/creditor relationship existed with the county collector, not with Leeanna or Robert. For instance, the county collector offered the property for sale, and AP paid the county collector the amount bid. If AP had not paid the county collector the amount bid, AP would have been liable to the county collector in a civil proceeding for the amount bid. Thus, during the sale process, the county collector, as a creditor, held a claim against AP, as a debtor.

Additionally, when an owner or interested party redeems the delinquent taxes on a property, as in this case, the county clerk issues the redemption money to the purchaser. As a result, during the

redemption process AP held a claim against the county collector for the redemption money. See *City of Chicago v. City Realty Exchange, Inc.*, 127 Ill. App. 2d 185, 190 (1970) (one of the interests a tax purchaser acquires through a certificate of purchase is the right to be paid the price of the sale, interest, costs, and any other taxes paid, if there is redemption); *In re Bequette*, 184 B.R. 327, 336 (S.D. Ill. 1995) (a certificate of purchase gives the tax purchaser the right to receive payment if the property is redeemed within the statutory redemption period).

The owner of the property, however, is not involved in the relationship between the county collector and the purchaser. In fact, the owner's debtor/creditor relationship also exists with the county collector. Prior to the tax sale, the owner may redeem by paying the county collector. In addition, when the tax lien is extinguished by the tax sale confirmation, the owner remains liable for the taxes due and a civil proceeding may be instituted against the owner to collect the taxes due on the property. Moreover, to redeem the property, the owner deposits the redemption amount with the county collector payable to the county collector. Consequently, AP did not have a claim against Leeanna or Robert, nor did AP have a debtor/creditor relationship with them.

Furthermore, AP suffered no injury as a result of the Fund's redemption. The right of a tax certificate holder to receive a deed is subservient to the right of a person interested in the property to redeem. *Monreal v. Sciortino*, 238 Ill. App. 3d 475, 479 (1992). The mere failure of the tax certificate holder to get a deed cannot be considered as injury, since the certificate of purchase gives the purchaser no legal or equitable title in the land and the purchaser recovers the amount paid for the certificate from the court after the redemption. *Monreal*, 238 Ill. App. 3d at 479; *In re Application of Du Page County Collector*, 98 Ill. App. 3d 950, 952 (1981).

Accordingly, Robert's transfer of the property to the Fund cannot be fraudulent under the Act. Since AP cannot state a claim under the Act, the trial court's dismissal of AP's chancery complaint was not erroneous.

## II. SECTION 2—619 MOTION TO DISMISS PETITION FOR A TAX DEED

■ The purpose of a section 2—619 motion to dismiss is to dispose of issues of law and easily proved issues of fact from the outset of a case, and a court may consider pleadings, depositions, and affidavits. *Spiegel v. Hollywood Towers Condominium Ass'n*, 283 Ill. App. 3d 992, 998 (1996). If a cause of action is dismissed pursuant to a section

2—619 motion to dismiss, the questions on appeal are whether a genuine issue of material fact exists and whether the defendant is entitled to a judgment as a matter of law. *Wright v. City of Danville*, 174 Ill. 2d 391, 398-99 (1996). Our review is *de novo*. *Spiegel*, 283 Ill. App. 3d at 998.

■ AP raises two arguments regarding the dismissal of its petition for a tax deed. First, AP contends that, if Robert's transfer of the property to the Fund was fraudulent under the Act, the Fund lacked standing to redeem the delinquent property. Second, AP contends that, regardless of whether Robert's transfer was fraudulent under the Act, the Fund's redemption was defective because it did not file a redemption-under-protest form.

Regarding AP's first argument, as stated above, Robert's transfer of the property to the Fund was not fraudulent under the Act. Accordingly, the Fund owned the property at the time of redemption and, thus, possessed standing to properly redeem the property. See 35 ILCS 200/21—345 (West 1996).

Regarding AP's second contention, we reject AP's reliance on *In re Application for Judgment & Sale by the County Treasurer & ex officio County Collector*, 276 Ill. App. 3d 1084 (1995) (*Galmon*). Instead we follow this court's previous ruling in *In re Application of the County Treasurer & ex officio County Collector*, 292 Ill. App. 3d 310 (1997) (*Bluegreen*), and hold that the Fund was not required to file a protest form to redeem the delinquent property. See also *In re Application for Judgment & Sale by the County Treasurer & ex officio County Collector*, 294 Ill. App. 3d 487 (1998) (declining to follow *Galmon* and following *Bluegreen*).

Therefore, since defendants were entitled to a judgment as a matter of law, the trial court properly dismissed AP's petition for a tax deed.

Based upon the foregoing, we affirm the judgment of the circuit court of Lake County.

Affirmed.

INGLIS and McLAREN, JJ., concur.